## VACUUM OIL CO. v. EAGLE OIL CO. OF NEW YORK et al.

### (Circuit Court, D. New Jersey. June 18, 1907.)

1. EQUITY—PLEADING—ISSUE UPON PLEADING.

   At the hearing upon a plea in equity and a general replication no fact is in issue except the truth of the matter set up in the plea.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 639.]

2. SAME—BURDEN OF PROOF.

   Where a bill alleges that certain acts were done by defendants partly within the United States and partly within foreign countries, a plea which sets up that such acts were done wholly in foreign countries is not an affirmative but a negative plea, and the burden of proof rests upon the complainant; the effect of the plea being to deny one of the allegations of the bill.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 726.]

3. COURTS—JURISDICTION—PLACE OF ACCRUAL OF CAUSE OF ACTION—TRADE-MARKS AND TRADE-NAMES—UNFAIR COMPETITION IN FOREIGN TRADE.

   A corporation was organized under the laws of New Jersey for the purpose of exporting oil for sale in foreign countries. Its manager, who was a dealer in Hamburg, Germany, was given a power of attorney conferring on him full authority to act for the company in all matters and which in effect vested in him all of its powers in respect to its business. He continued the business in Hamburg, in the name of the company, which purchased oils from a refinery in this country and had the same shipped in its name to Hamburg to itself as consignee, from which point they were distributed. By its directions barrels were shipped unmarked, except for an identifying mark, and on their receipt at Hamburg, and before their sale to consumers, they were marked with names and brands previously exclusively used by complainant to designate its different kinds of oil, which it also sold largely in Europe. Such company also made false representations that its oils were the same as complainant's and made by the same process. Held, in a suit against the company, its manager, and certain of its officers, that such acts of fraud and unfair competition were not committed solely in a foreign country, but had their inception and were in part performed in this country, whence the barrels were purposely sent without marks, and that a court of the United States had jurisdiction to grant relief against the same.

4. EQUITY—JURISDICTION—SUBJECT-MATTER OF SUIT.

   The fact that the subject-matter of a suit is situated in a foreign country will not deprive a court of equity of the United States of jurisdiction to grant relief against fraud with reference to such subject-matter by defendants, who are within the court's jurisdiction.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Equity, § 96.]

In Equity.

See 122 Fed. 105.

Osgood & Davis (Edmund Wetmore and C. Schuyler Davis, of counsel), for complainant.

Eugene Mackey and Cornelius G. Scully (F. W. Hastings, of counsel), for defendant.

CROSS, District Judge. The pleadings in this case are voluminous, but, as we shall see subsequently, the issue is very narrow. Stated in the briefest terms, the bill of complaint alleges the adoption, use, and registration by the complainant in the United States, of several words as trade-marks, for instance "Vacuum," "Arctic," "Etna," "Viscolite," and "Electra"; that, even if these are not good trade-marks, they have

become nevertheless, by extensive use and advertisement, known to consumers as trade-names; that complainant sells its products directly to consumers in several foreign countries, naming them, under said trade-marks or trade-names; that said words have become generally known and recognized in other countries as indicating products of the complainant. The bill of complaint charges the defendants with fraudulently, and for the purpose of deception, using said words for goods sold in the United States, with placing said brands in the United States upon goods intended to be transported and sold in foreign countries, with causing to be transported to foreign countries for sale therein packages of oil bearing said brands, with causing oils to be transported to foreign countries from the United States, for the purpose and with the intent of branding them in such foreign countries with said brands, with placing such brands upon packages of oils in said countries, and with selling oils in said countries in packages having upon them said brands. In addition to the allegations that the words above used are registered trade-marks or trade-names, in this and some other countries, the bill contains all of the allegations necessary to charge, and does charge, the defendants with unfair competition in trade. Jurisdiction has been obtained over the defendants, Eagle Oil Company of New York, F. W. Hastings, Jr., and George F. Von Krogh. The persons named are made parties defendant individually, as well as in the capacity of officers and directors of the defendant corporation. The defendants Eagle Oil Company of New York, and F. W. Hastings, Jr., as Secretary and Treasurer of said corporation, and as an individual, have filed a joint plea and answer herein, and the defendant George F. Von Krogh, as director and individually, has filed a separate plea and answer. The pleas and answers are the same. The insufficiency of the pleas was alleged by the complainant, and that question was set down for argument before the late Judge Kirkpatrick, by whom the objection was overruled and the pleas sustained. Subsequently the answers were excepted to for insufficiency, but the exceptions were also, for the most part, overruled, whereupon replications were filed joining issue upon the matters set forth in the pleas and answers. Testimony has been taken as to the truth or falsity of the pleas, and that question is now before the court. The substantial parts of the pleas are as follows:

"That such acts or deeds, if performed or done at all, and not admitting hereby that such acts and deeds were done or performed by it, were wholly done or performed without the borders and boundaries of these United States, and wholly within the borders and boundaries of some foreign country or nation, and that of such acts and deeds only the courts of such foreign country or nation, and not this court, or any court within these United States, has jurisdiction. And, further, that this plaintiff has heretofore instituted legal proceedings in a court of competent jurisdiction in the German Empire, to restrain the respondent Eagle Oil Company of New York from the commission of the very acts and deeds done and performed in the German Empire, with regard to the use of the word 'Vacuum,' which the plaintiff now asks relief against and discovery of in this suit, true translations of the plaintiff's bill, defendant's answer, and the decree of the court in such proceedings are hereto attached, marked, respectively, 'Exhibit A,' 'Exhibit B,' and 'Exhibit C,' and made part hereof, and that. notwithstanding such decree, the complainant has appealed therefrom to a higher court, where the same is now pending. And, further, that this plaintiff has also instituted legal proceedings in

a court of competent jurisdiction in the Kingdom of Denmark to restrain in that country the use of the word 'Vacuum' on petroleum oils and products, sold for a purpose similar to that for which plaintiff sells its oils and products, and in advertisements, statements, publications, and writings, relating and referring to such oils and products."

Upon the argument as to the validity of the plea, one of the objections was multifariousness; but it was held that the facts pleaded tended to but the one conclusion, which was that the court had no jurisdiction over the subject-matter of the suit. In the course of his opinion, Judge Kirkpatrick says:

"The bill charges infringement of the complainant's trade-marks and unfair competition in trade by their use. As to the former, the complainant concedes that neither its 'trade-marks registered in the United States nor its common-law trade-marks afford protection against acts committed wholly in foreign countries.' This must be so, for to hold that the branding of goods in a foreign country with a trade-mark registered in the United States constitutes unfair competition in trade would be but another way of extending the trademark rights of a citizen of the United States beyond the borders of the country."

Of course, the judge, as the question was then presented, had nothing to do with the truth or falsity of the pleas, and, if the pleas have been shown to be true, I shall acquiesce in and be governed by the law as he has laid it down. Referring back to the pleas, however, it should be kept in mind that they aver that the acts and deeds which were set forth in the bill of complaint were wholly done or performed without the borders and boundaries of the United States, and wholly within the borders and boundaries of some foreign country, and that consequently this court has no jurisdiction. The case, as already intimated, now comes before the court on the truth or falsity of the pleas, and the only question for solution is: Were the acts complained of wholly done or performed without the United States?

At the hearing upon a plea in equity and a general replication, no fact is in issue, but the truth of the matter pleaded. Farley v. Kittson, 120 U. S. 303, 7 Sup. Ct. 534, 30 L. Ed. 684; Dalzell v. Dueber Mfg. Co., 149 U. S. 315, 326, 13 Sup. Ct. 886, 37 L. Ed. 749; United States v. Land Co., 148 U. S. 31, 13 Sup. Ct. 458, 37 L. Ed. 354.

The complainant insists that the pleas are affirmative, and that therefore the burden of proof rests upon the defendant. An affirmative plea is one that sets up some matter dehors the bill. A negative plea denies some material allegation in the bill. In the former case the burden of proof rests upon the defendant; in the latter upon the complainant. Although the plea under consideration is in form an affirmative plea, it is at least doubtful whether it is such in fact. The bill of complaint has set out facts tending to show that the acts complained of were done both in this country and in foreign countries. It seems to me, therefore, that a plea which set up that the acts were wholly done within the borders and boundaries of some foreign country or nation does not set up new matter. It merely denies a part of the allegations made in the bill. The bill says the acts were done here and elsewhere. The plea says they were not done here, but were done elsewhere. The plea amounts to a denial, in other words, of facts which the complainant has set up, but which, if no plea has been interposed,

it would have been compelled to prove in order to obtain the desired relief. The complainant further contends that, in any event, the pleas must be taken as admitting that the acts complained of were in fact committed by the defendants in foreign countries; but it is unnecessary to pass upon this question, since I have reached the conclusion that the evidence shows that the acts complained of, and for which relief is sought, were not wholly done outside of the United States and in foreign countries as the pleas allege. The pleas must stand or fall upon the truth or falsity of that allegation.

The acts complained of are charged to be fraudulent. If the evidence shows that essential parts of these fraudulent acts were committed within the United States, the pleas must be overruled. The complainant's contention is that the fraudulent acts were not only conceived, but material parts thereof were consummated in the United States, and that, but for the acts done here, the acts performed in the foreign countries would have been impossible. It claims that the facts present a situation not unlike that of a man who, after procuring and loading a firearm, aims it across the boundary line between the state in which he is and another state in which his victim is, and then, firing the gun, kills him. So much of the evidence offered to show the falsity of the plea is of a documentary character that it is well nigh impossible, within the limits of this opinion, to refer to it in detail. Consequently, I will be compelled to give my conclusions thereon, rather than establish them by any complete reference to the testimony.

The defendant Von Krogh, in 1899, was a resident of Germany, and engaged in buying and selling petroleum oils at Hamburg, under the name of the "Eagle Oil Company." Some time during that year he opened negotiations with the defendant Confer for a supply of oils. Confer was at that time engaged in refining oil at or near Oil City, Pa., under the name of the "Empire Oil Works," of which he was the sole proprietor. Following up the foregoing proposition, Von Krogh visited Mr. Confer at his place of business and made a contract whereby he (Von Krogh), as the Eagle Oil Company, agreed to purchase from Mr. Confer, and Mr. Confer agreed to supply, all the oils that that company would require for five years, except that during the first year the Eagle Oil Company was given the privilege of buying oils elsewhere. It was further then and there proposed by Mr. Von Krogh that a corporation should be organized under the laws of New Jersey, to be known as the "Eagle Oil Company of New York," and Mr. Confer was induced to join the project, as were F. W. Hastings, Jr., one of the defendants (who was the attorney afterwards employed to organize the company) and the defendant Brockway, from whom Von Krogh had previously bought oils. The defendant the Eagle Oil Company of New York was thereupon incorporated on the 25th day of November, 1899. Its officers were Brockway, president; Confer, vice president; Hastings, secretary and treasurer, who, with Von Krogh, composed the board of directors. The new company took over the business which the defendant Von Krogh had, prior to the incorporation of the new company, carried on in Germany under the name of the "Eagle Oil Company." On the 30th day of the same month in

which the defendant company was incorporated, it, by a written instrument under its seal signed by its president, and attested by its secretary, appointed Von Krogh, its general manager for the sale and marketing of oils and their products, "in Europe, Asia, Africa, Australia, North and South America, and all and every country or countries in the world," with the fullest powers with reference to the collection of moneys for such sales, in the making and transfer of all kinds of commercial paper, in effecting insurance, in purchasing and arranging for cars, tanks, warehouses, barges, and buildings for the transportation and storage of oils, and in the employment of all necessary help. It also conferred upon him power to sue and to be sued, and to register and establish the corporation in Hamburg. It also bound itself for all consequences arising out of said power of attorney, especially in respect to the business done by its manager, Von Krogh, at Hamburg, and agreed to submit itself in the person of Von Krogh to the courts of law at Hamburg, and further authorized him to do all and singular the things specified, as fully as the Eagle Oil Company could have done if personally present, by its president and directors.

It will be seen from the foregoing abstract of the power of attorney that Von Krogh was to all intents and purposes substituted for the corporation. Wherever it could act he could act. Whatever it could do he could do, and whatever he did, it was bound by. Mr. Confer, one of the defendants, who at first was vice president, but later president of the corporation, and connected with it from its inception, says that it was organized for the purposes of supplying Von Krogh with oils for sale in foreign countries. Although he was a stockholder, director, and officer in the company for over two years, he says there was never a meeting of the stockholders, directors, or officers held during his connection with the company; and, further, that the company never sold any oil within the United States, and never planned to, nor did it ever refine or compound oil, except through refiners from whom it purchased. His testimony also shows that in May, 1900, Mr. Von Krogh again visited his refinery, and upon that occasion told him that the complainant was doing a large business in Germany, and asked him to make oil like the complainant's to be sold in competition therewith. Upon Confer's statement that he was unable to do this, and that he did not know the methods of compounding which the complainant employed, Von Krogh proposed that a spy be sent to the complainant's refineries for the purpose of getting employment therein and learning their methods. The testimony thus far adverted to has shown the substantial oneness of Von Krogh and the defendant corporation, and the purpose of its organization. A considerable portion of the remaining testimony consists of letters of Von Krogh and advertisements issued and circulated by him and by the Eagle Oil Company of New York, both in this country and abroad.

It appears that the barrels containing the oils shipped by the Eagle Oil Company of New York, from this country to Von Krogh, its manager, were for the most part unmarked, except in so far as they were marked or branded by private markings as directed by Von Krogh or other agents of the defendant corporation, from Hamburg. Some of the barrels, however, did have the name Eagle Oil Company of

New York, in the circle around the edge of the head of the barrel. In a letter dated Hamburg, January 31, 1900, written to the Empire Oil Works (Confer) by the Eagle Oil Company, per Von Krogh, the following sentences appear:

"In shipping more of the compounded OOO CC please don't put the Eagle brand on barrels containing this oil, as we want to brand them with a certain brand. On the head of the barrels containing the compound AA DD it was stenciled AA, besides the Eagle brand, which is not right."

The proofs satisfy me that this oil thus barreled and exported was elsewhere than in this country, but before sale, advertised and marked under several different trade-names which were the exclusive property of the complainant, and that the packages containing the oil were designed and intended to be marked as above stated, when they were shipped from this country. The inference that the ends of the barrels were left unmarked, in furtherance of the above-mentioned fraudulent purpose, is fairly deducible from the testimony. Von Krogh, although examined as a witness, and denying almost everything else that was pertinent, did not deny that oils were shipped from this country unmarked, for the purpose of being marked and sold as they subsequently were, in foreign countries. In one letter which he wrote to Confer, he directed him, if any one asked for information about the Eagle Oil Company of New York not to give any statement, but to say that the company was not asking for credit, and that therefore no statements would be made. About the same time he wrote to Confer, asking him to change the name of his refinery to the Eagle Oil Works. Mr. Confer did not fall in with this proposition, whereupon he was directed by Von Krogh thereafter to bill all shipments abroad to the Eagle Oil Company of New York, in the name of that company, as shipper, and Von Krogh then issued a large lithograph showing an active refinery labeled with the name of the defendant corporation. This picture was fraudulent, and Confer says, and it is not denied, that Von Krogh told him that it was taken from a photograph of the Emery Refining Works at Bradford, Pa., but reversed so that its fraudulent character would not be readily apparent. As a matter of fact, the Eagle Oil Company never owned or operated any refinery. After this suit was instituted, Von Krogh wrote to Mr. Confer asking him to bear a part of the expense of its defense, and in this letter said that people with whom he had talked thought that it was no more than right and just that the refiner whose oil he had been putting on the market and selling in competition with the Vacuum Oil Company should stand a part of the expense of the suit. In another letter to Confer, he says: "I can only say that you would not have had half so many orders if we had not been competing so with the Vacuum Oil Company." He and the corporation he managed also advertised the oils he was selling as of the same kind and quality, and made by the same process of distillation as those of the complainant; whereas, Mr. Confer says that they were not, and that he had no knowledge of how the complainant's oils were distilled or compounded, and that the complainant's process, or what is known as the "vacuum process," was not used in his refinery. To show the motive and purpose of the defendants, I cannot do better than quote at length

from a letter written by Von Krogh to Mr. Confer, when he first learned of the suit at bar:

"I do not know the nature of the suit, as I have not as yet received copy of the bill of complaint, but I do not think it can be anything else than that the Vacuum people wants to sue the Eagle Oil Company of New York for the fact that I or the branch in Hamburg is claiming that we also have Vacuum oils. As far as I know, the Vacuum people have the word 'Vacuum' registered as 'trade-mark' in America, and also certain names for oils, as 'Arctic Machinery Oil,' 'Viscolite Engine Oil,' 'Electra Oil,' etc. But in Germany none of these words are registered by the Vacuum and can by German law not be registered for any one at all. I am therefore not doing anything but what is fully right if I use the words 'Vacuum,' 'Marine Oil,' 'Vacuum Valve Oil,' 'Arctic Machine,' etc., and as the Eagle Oil Company of New York in America is not using any of these words, the Vacuum Oil Company has no right whatever to sue the Eagle Oil Company in America for business done by me as European manager, or by the registered branch of the Eagle Oil Company in Hamburg."

This letter seems to show very plainly not only what the defendants were doing, but also their purpose and object in doing it. It shows guilty knowledge, knowledge of the charges before they had been read. It shows too that they knew the complainant's trade-marks and trade-names, and admits their use, but only in countries where the complainant's rights could not, as Von Krogh thought, be protected. It was the plain intent of the defendant to trample upon the rights of the complainant, but to do it in such a manner as to avoid prosecution. They were innocent, but only because no overt acts had been committed in the United States. It seems to me that the admissions of this letter, as amplified and fortified by the other testimony, prove the complainant's case. It shows why the barrels were not branded in this country, and where and how they were branded, and the purpose and intent of it all. It plainly suggests a fraudulent conspiracy.

A letter dated Hamburg, January 29, 1902, written by one Vollm to Mr. Confer, after referring to the "private letter of our Mr. Von Krogh to you," the one just referred to, says:

"Neither you nor one of the other directors must say anything which might be used from the Vacuum people against us here, i. e., don't say that you are selling oils to us, that you don't make oils by the Vacuum process, and also please don't say that the Eagle Oil Company does not manufacture itself, etc., etc."

If anything more, however, were needed to manifest their fraudulent intent, it may be found in another letter written by Von Krogh to the defendant Hastings, about the same time, from which the following extract is taken.

"I do now appreciate the gravity of the situation, but I can assure you that the German law or court would not be of any use to the Vacuum Oil Company, so I have no reason to be afraid in that line. In the meantime, I have sent you answers to the bill and put same in fine shape with documents, etc., and I should think that the court must reject their claims only for the reason that we have not done anything of their claims in America, and that they therefore have to sue us in such countries where we should have done any unlawful acts."

The above letter is an admission of guilt, with an avowed hope of immunity "only for the reason," however, that the acts complained of were not done in this country. Extracts from other letters of Von

Krogh of similar purport might be given, but it seems unnecessary. We have already seen the apparent object for which the Eagle Oil Company of New York was incorporated, its practical merger in Von Krogh, and to some extent the way in which it was used to further the object of the defendants. The Eagle Oil Company of New York shipped to Von Krogh at Hamburg, and bills of lading so made out were mailed to the Eagle Oil Company of New York at Hamburg, and by that company turned over to the purchaser. The oils so shipped were barreled and branded by Mr. Confer, as above indicated; some with the name of the Eagle Oil Company, and others without any marks except private marks for identification. A number of orders from the Eagle Oil Company of New York sent from Hamburg by one Ehler, a stockholder, or Von Krogh, the manager of the company, appear as exhibits, and indicate the brands with which the barrels were to be branded by Mr. Confer. Pursuant to these orders, the barrels were delivered to the railroad at Mr. Confer's refinery, billed through in care of a steamship company to Baltimore, Philadelphia, New York, or other seaport, as the case might be. The railroad company received from the steamship company a new bill of lading when the oil was loaded on the vessel, which it gave to Mr. Confer. This bill was made in conformity with the shipping bill to the destination of the oil in Europe. Mr. Confer then mailed the bill of lading received from the steamship company, with draft attached, to the Eagle Oil Company of New York, at Hamburg. Just where the oil thus shipped was branded with the complainant's marks does not appear, but it does appear that it was done before delivery to the purchaser, and Von Krogh says it was not done in this country.

It is apparent, however, as already stated, that the scheme was designed and intended to injure the defendant's business by the false and fraudulent use of its trade-names, while at the same time maintaining so far as possible an unassailable position. Sufficient evidence has been given to satisfy me that the scheme was conceived and partially, but to a material extent, carried out in this country. The suit is founded upon fraud, and some of the defendants have been personally served with process and are before the court. The action is in personam. It cannot be that the arm of the court is too short to reach and stop this fraudulent conduct, or so much of it, at least, as is carried on in this country. The truth of the facts set forth in the pleas has not been shown, but the contrary. The acts complained of were not wholly performed outside of the United States, and this is all, under the issues presented, that I am required to find. The purchase and shipment of this oil for the purpose of selling it under false representations, and the sale of it under false representations and trade-names abroad in unfair competition with the complainant, was a single business, and each step in the transaction was part of a single fraudulent scheme, which, under the circumstances detailed, must be deemed the act of the defendants. This unfair competition has inflicted injury upon the complainant's business in this country by diminishing, or tending to diminish, its foreign trade. This suit is brought to enjoin the perpetration of such fraudulent acts and conduct in this country.

It is not founded upon any foreign statute, nor has such been pleaded, nor does it make any difference whether the complainant's trademarks are valid in Germany or not. The presumption is that the law in the foreign countries where any part of the fraudulent business was carried on is the same as our own, and that fraudulent acts are unlawful there as here. The counsel of the complainant, in their brief, have stated the rule as follows: It is apparent that an act that violates the law of fair dealing and good conscience must be of universal recognition. To assume the contrary is to suppose the foreign countries in question to be in a state of barbarism, and that is to assume a state of affairs that justify this court in applying the law of the forum. Unfair competition in trade is made cognizable by a court of equity, because of its essential fraudulent character. The rule is stated in Hopkins on Trade-Marks, p. 41, as follows:

"It is very clear that equity intervenes in the protection from fraud of both the complainant, whose business is or may be injured by the unfair and fraudulent competition, and the public, who are the consumers of its merchandise."

This rule was recognized by the Supreme Court of the United States in Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 549, 11 Sup. Ct. 396, 34 L. Ed. 997. But while the action is founded upon fraud, it is also of a transitory character, and the fact that some of the fraudulent acts were committed outside the jurisdiction of this court and outside of the United States will not avail the defendants. McKenna v. Fisk, 1 How. 241, 247, 248, 11 L. Ed. 117; Mitchell v. Harmony, 13 How. 115, 137, 14 L. Ed. 75; Dennick v. Central R. R. Co., 103 U. S. 11, 18, 26 L. Ed. 439.

In 4 Pomeroy's Equity Jurisprudence, § 1318, the rule is concisely stated as follows:

"Where the subject-matter is situated within another state or country, but the parties are within the jurisdiction of the court, any suit may be maintained and remedy granted which directly affects and operates upon the person of the defendant, and not upon the subject-matter, although the subject-matter is referred to in the decree and the defendant is ordered to do or to refrain from certain acts toward it, and it is thus ultimately but indirectly affected by the relief granted. As examples of this rule, suits for specific performance of contracts, for the enforcement of express or implied trusts for relief on the ground of fraud, actual or constructive, and the like, may be brought in any state where jurisdiction of defendant's person is obtained, although the land or subject-matter is situated in another state, or even in a foreign country."

See, also, Collins Co. v. Brown, 3 Kay & Johnston's Reports, 423, and Collins Co. v. Cowen, 3 Kay and Johnston's Reports, 428.

Courts of equity have repeatedly enforced the specific performance of contracts for the sale of land in other states. Potter v. Hollister, 45 N. J. Eq. 508, 18 Atl. 204; Lindley v. O'Reilley, 50 N. J. Law, 636, 15 Atl. 379, 1 L. R. A. 79, 7 Am. St. Rep. 802; Bullock v. Bullock, 52 N. J. Eq. 561, 565, 30 Atl. 676, 27 L. R. A. 213, 46 Am. St. Rep. 528. In Massie v. Watts, 6 Cranch, 148, 160, 3 L. Ed. 181, Chief Justice Marshall, after citing cases, says:

"Upon the authority of these cases, and of others which are to be found in the books, as well as upon general principles, the court is of opinion that, in a case of fraud or trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the ju-

risdiction of that court may be affected by the decree." Briggs v. French, Fed. Cas. No. 1,870; De Klyn v. Watkins, 3 Sandf. 185; Williams v. Fitzhugh, 37 N. Y. 444.

The pleas not having been sustained, the complainant is entitled to a decree. Its form, unless agreed upon, will be settled by the court upon application after notice.