**BRANCH v. FEDERAL TRADE COMMISSION.**

No. 8240.

Circuit Court of Appeals, Seventh Circuit.

Feb. 29, 1944.

Rehearing Denied March 25, 1944.

---

Joseph G. Branch and Warren H. Orr, both of Chicago, for petitioner.

Joseph J. Smith, Jr., Federal Trade Commission, of Washington, D. C., for appellee.

Before MAJOR and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

Joseph G. Branch has filed in this Court a petition to review and set aside a cease and desist order issued by the Federal Trade Commission pursuant to a complaint of the Commission charging him with engaging in unfair methods of competition and unfair and deceptive acts in commerce in violation of the Federal Trade Commission Act, 52 Stat. 111, 15 U.S.C.A. § 41 et seq. Substantial evidence in the record supports the following statements of fact.

The petitioner is an individual doing business as the Joseph G. Branch Institute of Engineering and Science, having his office and place of business at his residence in Chicago, Illinois. The petitioner conducts what he represents to be a correspondence school. For a number of years he has sold and distributed correspondence courses of study by mail in Latin-American countries. In the conduct of these courses, he has caused books, instructions, and lesson sheets to be transported to purchasers in these foreign countries. The purchaser prepares the lessons and returns them to the petitioner in Chicago, where they are graded. The courses range in price from $70 to $450 and are extensively advertised in newspapers published in various Central and South American countries. The petitioner also circulates letters, leaflets, circulars, catalogues, and other advertising material among his prospective students. He represents in this literature that he maintains an institute of engineering and science in Chicago, where it was founded in 1910. Petitioner's curriculum includes correspondence courses in a large number of professional and other educational subjects. He offers courses in agriculture, architecture, aviation, mechanical engineering, industrial chemistry, sugar chemistry, analytical industrial chemistry, dentistry, Diesel engineering, radio and television engineering, automotive engineering, civil engineering, mechanical engineering, mining engineering, petroleum engineering, sanitary engineering, metallurgy, veterinary science, medicine, biology, bacteriology, law, pharmacy, and several other subjects. He represents that "The diplomas and degrees awarded by this worthy Institute are signed and sealed by the Officials of our Institute, acknowledged before a Notary Public, certified by the County Court Clerk and authenticated by the Secretary of the State of Illinois, U. S. A." and that it is " * * * the only officially recognized University in accordance with the laws of United States for extension courses (by correspondence)."

The petitioner's school is neither a university nor an institute. It has no entrance requirements, no resident students, no library, no laboratory, and no faculty. It has no one teaching anything. The staff consists of a day laborer, a messenger, eight girl translators, the petitioner's daughter, a Mexican by the name of Reyes who appears from the record to have a Bachelor of Science degree from the University of Mexico, and the petitioner.

Although he is not an engineer and, of course, has no engineers associated with him, he offers courses in all of the most difficult branches of engineering. Although he is not a doctor or a dentist, he offers courses in medicine and dentistry. The petitioner is himself a college graduate and has been admitted to the practice of law.

The petitioner's method is to send his students textbooks and lessons to study. Examination questions based upon these lessons are sent to the students who answer them and return them to the petitioner, where they are corrected and graded. A diploma or degree is awarded to anyone who makes the passing grade of more than seventy-five per cent. If the student does not make a passing grade, he is sent a further examination and if he fails to pass this one, he is permitted to continue his studies until he passes. The evidence also shows that no university awards degrees for work done entirely by correspondence. The petitioner is not authorized by law or by any educational association to issue diplomas or give degrees. The petitioner did obtain from the Superintendent of Public Instruction of Illinois a provisional approval, pending inspection. Upon inspection, however, the petitioner's alleged school was disapproved of and the Superintendent's recognition was withdrawn by letter. The petitioner ignored this notice, however, and continued to represent that his courses of instruction were approved by the Department of Education of the State of Illinois. The so-called diplomas and degrees awarded by the petitioner have signatures attested to by public officials in such a manner as to make it appear that they have official sanction.

Upon evidence of this kind, the Commission issued its order that the petitioner cease and desist from using the words "Institute" or "University" in connection with the conduct of its business or representing that such business is either an institute or a university; from representing through the use of the word "University" that the petitioner's school is an educational institution of higher learning with the power to confer degrees; from representing through the issuance of so-called degrees and other documents that the school is an institution of higher learning; from using the words "officially recognized" or words of similar import in connection with

his school, or otherwise representing directly or by implication that the school is recognized or approved as an institution of learning by the United States Government or by any State of the United States or any agencies thereof; from representing, through the affixing to diplomas and degrees of certificates of acknowledgment or authentication executed by notaries public and other public officials, that the so-called school is an institution of learning recognized by the Government of the United States or any State thereof; and generally from representing, directly or indirectly, that the school is an accredited institution and that the so-called diplomas and degrees are accepted or recognized by any governmental agency or any reputable college or university.

The petitioner challenges the order of the Commission on the grounds that it is not supported by substantial evidence and that the Commission has no jurisdiction over his business. On oral argument, the petitioner did not have the temerity to insist that the evidence was insufficient to support the Commission's findings. The record certainly contains an abundance of evidence to support findings that the representations made by the petitioner in the conduct of his "diploma mill" were false and fraudulent.

 The only serious question presented is whether or not the Commission had jurisdiction to issue the order which it did. The petitioner's first contention is that the business in which he is engaged is not commerce. As we have seen, the petitioner's method of conducting his correspondence courses, once he finds a customer, is to send him books, instructions, and written examinations. The examinations are returned to the petitioner, who grades them and communicates the result to the customer, who ultimately gets a "diploma." For these services and supplies, the petitioner charges a fixed fee, which the customer remits. That such a course of business is "commerce" within the meaning of the Constitution and the Federal Trade Commission Act is not open to question after the Supreme Court's decision in International Textbook Co. v. Pigg, 217 U.S. 91, 106, 107, 30 S.Ct. 481, 54 L.Ed. 678, 27 L.R.A.,N.S., 493, 18 Ann. Cas. 1103. In that case, the intercourse between a correspondence school and its customers in different States was held to be interstate commerce. It follows that such business dealings of the petitioner with customers in foreign countries is foreign commerce within the meaning of the Constitution and the Act.

The petitioner next insists that no "public interest" is shown to support the jurisdiction of the Federal Trade Commission as required by the decision of the Supreme Court in Federal Trade Commission v. Klesner, 280 U.S. 19, 50 S.Ct. 1, 74 L.Ed. 138, 68 A.L.R. 838. In that case, a controversy existed between two business firms in Washington, D C., over the right to use the name "Shade Shop." There was no issue which involved more than the rights of these two businesses. The general trade or public had no interest in a private controversy over the use of a name.

 That is not the case at bar. The evidence here shows that there are some fifty or more correspondence schools in this country using correspondence methods to carry on their business. At least a few of these schools were engaged in competition with the petitioner for the business in the Latin-American field. The action of the Federal Trade Commission was aimed at compelling the petitioner to use fair methods in competing with his fellow countrymen. It was an attempt to eliminate the unfair, fraudulent, and deceptive practices of the petitioner from a field already occupied by several firms and potentially open to more. It has been held many times that the public has an interest in preventing false and fraudulent conduct under such circumstances. Dr. W. B. Caldwell, Inc., v. Federal Trade Commission, 7 Cir., 111 F. 2d 889; International Art Co. v. Federal Trade Commission, 7 Cir., 109 F.2d 393, 397; Consolidated Book Publishers, Inc., v. Federal Trade Commission, 7 Cir., 53 F.2d 942, 945.

 Finally, it is contended by the petitioner that the Commission has no jurisdiction because the acts complained of, that is, the circulating of the misrepresentations in the forms of letters, catalogues, and newspaper advertisements, took place in Latin-American countries. It is true that much of the objectionable activity occurred in Latin America; however, it was conceived, initiated, concocted, and launched on its way in the United States. That the persons deceived were all in Latin America

is of no consequence. It is the location of the petitioner's competitors which counts.

■ The Federal Trade Commission does not assume to protect the petitioner's customers in Latin America. It seeks to protect the petitioner's competitors from his unfair practices, begun in the United States and consummated in Latin America. It seeks to protect foreign commerce. If that commerce was being defiled by a resident citizen of the United States to the disadvantage of other competing citizens of the United States, the United States had a right to protect such commerce from defilement, even though the customer who is the victim of such a defilement and a nonresident may look to his sovereign for protection. For protection of the competitors within the United States, the United States is the sovereign to look to. The right of the United States to control the conduct of its citizens in foreign countries in respect to matters which a sovereign ordinarily governs within its own territorial jurisdiction has been recognized repeatedly. Blackmer v. United States, 284 U.S. 421, 436-438, 52 S.Ct. 252, 76 L.Ed. 375; Cook v. Tait, 265 U.S. 47, 54-56, 44 S.Ct. 444, 68 L.Ed. 895. Congress has the power to prevent unfair trade practices in foreign commerce by citizens of the United States, although some of the acts are done outside the territorial limits of the United States.

The next question, then, is: Has Congress authorized the Federal Trade Commission to exercise this power? May the Federal Trade Commission prevent resident citizens of the United States from engaging in unfair trade practices in commerce, although some of the acts in furtherance thereof took place without the territorial jurisdiction of the United States?

■ We have already held that the sale and furnishing of the petitioner's services and supplies to persons in foreign states is commerce within the meaning of Section 4 of the Federal Trade Commission Act, 15 U.S.C.A. § 44. Section 5(a) of the Act, 15 U.S.C.A. § 45(a), provides that: "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful." The Commission is authorized and empowered to prevent such practices. This is not merely a partial grant of some of the power which Congress has to prevent such practices. This grant embraces such power as is necessary to prevent all such practices, including the practices of the petitioner, although his acts were consummated outside the territorial limits of the United States while he remained in the United States.

■ The United States may protect its commerce from the wrongful acts of its own citizens who remain, as the petitioner did, within the United States and whose wrongful acts are prejudicial to other citizens of the United States who are in competition for that commerce. We think the power which Congress has given the Federal Trade Commission under Section 5(a) of the Federal Trade Commission Act is ample to support the jurisdiction exercised by the Commission in this case. The exercise by the United States of its sovereign control over its commerce and the acts of its resident citizens therein is no invasion of the sovereignty of any other country or any attempt to act beyond the territorial jurisdiction of the United States.

The petitioner has cited the case of American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826, 16 Ann.Cas. 1047. That was a suit for triple damages under the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note. The acts complained of took place entirely in Panama and Costa Rica and were not considered actionable wrongs there. The Supreme Court held that since the acts were committed outside the United States and were not wrongful where committed, the Sherman Act did not apply. That was not an attempt to protect resident competitors from the defilement of commerce originating in the United States. The commerce at which the action was directed in the American Banana Co. case was not commerce over which the United States had control. Therefore, a statute designed to protect commerce controlled by the United States could not possibly have applied.

From another source also we find evidence that Congress intended to give this power over foreign commerce to the Federal Trade Commission. That is the Export Trade Act, 40 Stat. 516, 517, 15 U.S. C.A. §§ 61, 64. Section 1 of the Act defines export trade as " * * * trade or commerce in goods, wares, or merchandise exported * * * from the United States * * * to any foreign nation * * *." Section 4 of the Act provides that "The prohibition against 'unfair methods of competition' and the remedies provided for en-

forcing said prohibition contained in sections 41-46 and 47-58 of this title [the Federal Trade Commission Act] shall be construed as extending to unfair methods of competition used in export trade against competitors engaged in export trade, even though the acts constituting such unfair methods are done without the territorial jurisdiction of the United States."

That the petitioner's business is commerce we have already decided. If it is commerce "in goods, wares, or merchandise," Section 4 of the Export Trade Act is applicable, although part of the petitioner's practices go on outside the territorial jurisdiction of the United States. This is a remedial statute implementing a national policy. By it Congress is seeking to free foreign commerce of unfair trade practices, just as it has attempted to free commerce between the States from such practices. We cannot assume that Congress intended to free only some of its foreign commerce from unfair trade practices. We are bound to give to the generic words used by Congress just as liberal a construction as the words are capable of in order to prevent such a partial protection to foreign commerce.

"Merchandise" is defined by Webster as, "The objects of commerce; whatever is usually bought or sold in trade * * *." That the petitioner's business is an object of commerce would seem to follow from our holding that such a business is commerce. The books, the written instructions, and the examination questions are tangible things that can be seen and handled and are objects which pass through the channels of foreign commerce. In addition to these tangible articles, the petitioner provides certain services in connection with their use and application. All of these constitute "objects of commerce," or "whatever is usually bought and sold in trade." They are, therefore, merchandise.

Since the petitioner's business is commerce in merchandise within the meaning of Section 1 of the Export Trade Act, we find that Section 4 of the same Act specifically authorizes the jurisdiction exercised by the Commission in this case, even though some of the acts of the petitioner were done outside the territorial jurisdiction of the United States.

The Commission's order is valid, and the petition to set it aside is denied.