**BULOVA WATCH CO., Inc. v. STEELE et al.**

No. 13396.

United States Court of Appeals Fifth Circuit.

Feb. 21, 1952.

Rehearing Denied March 13, 1952.

Maury Maverick, Harold D. Putman, San Antonio, Tex., George Cohen, New York City, Isidor Ostroff, Philadelphia, Pa., for appellant.

Grady Barrett, W. L. Matthews, and Herbert Davis, all of San Antonio, Tex., for appellees.

Before HOLMES, RUSSELL, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Bulova Watch Company, a New York corporation, sued Sidney Steele, a citizen of the United States actually domiciled and residing in San Antonio, Texas,[1] seeking to enjoin Steele from using the name "Bulova" on watches *in Mexico* and to recover damages resulting from such use.

1. Steele's wife, Sofia, was joined as a defendant on account of the community property law of Texas and there was also joined a Mexican corporation, S. Steele Y Cia., S. A., to whose rights Steele had succeeded.

Steele conducts a watch business in Mexico as a part of which he assembles watches, stamps them with the name Bulova and sells them as Bulova watches. The works and some of the watch cases and dials he purchases from companies in Switzerland, and some of the cases and dials he procures from companies in the United States.

The district court heard such evidence as was introduced relating to its territorial jurisdiction or jurisdiction of the subject matter, and then made findings of fact and conclusions of law fairly summarized in its judgment as quoted in the margin [2] and dismissed the case *with* prejudice.

In his answer, Steele pleaded lack of jurisdiction and several other defenses, including *res adjudicata,* laches and justification. The taking of testimony on the other issues thus presented was not completed because the district court held that it had no jurisdiction.

Bulova Watch Co., Inc., its predecessors and the Bulova family have been using the family surname "Bulova" to identify their watches since 1875. Since 1927, the name "Bulova", as applied to watches, has been registered under the various Trade Mark statutes of the United States. It has been registered under the Lanham Act of 1946.[3]

The Bulova Watch Co. has built up a watch business to the point that it is now, according to the testimony, the world's largest manufacturer of watches and its yearly sales exceed fifty million dollars. It spends vast sums of money each year in the United States and abroad to advertise its products and to make its name and reputation known to the public. Much of this advertising, through printed publications and radio broadcast, is distributed through Mexico, and a considerable amount is in the Spanish language.

Steele started in the jewelry and watch business in Texas in 1922. He learned of the name "Bulova" as applied to watches while employed in the watch business in 1926. Neither he nor any member of his family was ever named Bulova. In 1933, upon a search of the records, he found that the name "Bulova" was not registered in Mexico, and on December 5, 1933, there was granted to S. Steele, Y Cia., S. A., the predecessor in title of Sidney Steele, Mexican National Trade Mark No. 33602, purporting to grant the right to use the name "Bulova" in the Republic of Mexico as a trade name for watches. That trade-mark has been the subject of litigation between the Bulova Watch Company and the Department of National Economy and the Director of Industrial Property of the Republic of Mexico in cases before the Mexican Courts in which Sidney Steele was a party, and the Bulova Watch Company has not up to this time been successful in such litigation. At the present time there is a suit or proceeding pending in Mexico with reference to the right as between Bulova Watch Company and Sidney Steele to use the Bulova name on watches assembled and sold by Steele in Mexico.

If the district court has jurisdiction it is conferred because of diversity of citizenship[4] or because the case involves the Trade Mark laws of the United States.[5]

2. "* * * that all of the alleged acts of unfair competition by the use of the 'Bulova' name complained of by Plaintiff, Bulova Watch Company, Inc., were done and performed by the Defendant, Sidney Steele, in connection with his business of assembling, marking and selling watches solely in the Republic of Mexico and, therefore, the subject matter of this suit and the acts of the said Defendant are beyond the jurisdiction and control of the government and the law, both State and Federal, of the United States of America and of this Court."

3. Act of July 5, 1946, 60 Stat. 427, incorporated in 15 U.S.C.A. §§ 1051–1127.

4. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, and is between: (1) Citizens of different States: * * *". 28 U.S. C.A. § 1332.

5. "The district and territorial courts of the United States shall have original jurisdiction, the circuit courts of appeal of the United States and the United States Court of Appeals for the District of Columbia shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of

There is no dispute about the requisite diversity of citizenship and amount in controversy. Personal service of process in this case was had upon the Steeles in San Antonio, Texas. Bulova Watch Company claims that the action arises under the Trade Mark laws of the United States. This claim the Steeles deny and they deny also that Steele's conduct in Mexico was contrary to the laws of Texas. They claim that those laws, National and State, have no extraterritorial effect.

The issue to be decided is whether the cause of action, as disclosed by the pleadings and the evidence, is within the territorial reach of the court and of the laws of the United States. Unquestionably, the Steeles themselves are within the jurisdiction of the court and subject to its process. Courts have often exercised the power of restraining persons within their jurisdiction from prosecuting suits in other states or foreign countries, or from taking such action there as would be contrary to the law of the forum.[6] The more serious question is whether the conduct charged to Steele was lawful where done or whether it may be considered as in violation of the Trade Mark Laws or laws relating to unfair competition of the State of Texas or of the United States.

It will be helpful first clearly to understand the general nature of those laws and of the rights thereby protected. A trade mark symbolizes business good will.[7]

"There is no property in a trade-mark apart from the business or trade in connection with which it is employed. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141; Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 413–414, 36 S.Ct. 357, 360 (60 L.Ed. 713). 'The law of trade-marks is but a part of the broader law of unfair competition' (Id.), the general purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another." American Steel Foundries v. Robertson, Commissioner, 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317.

"The interest in a trade-mark or trade name is protected, * * * with reference only to territory from which he receives or, with the probable expansion of his business, may reasonably expect to receive custom in the business in which he uses his trade-mark or trade name, and in territory in which a similar designation is used for the purpose of forestalling the expansion of his business." Am.Law Inst.Restatement of Torts, Vol. 3, Sec. 732.[8]

In the comment to that section of the Restatement of Torts, it is said: "In each case the issue is whether, in the territory in which the similar designation is used, there are or are likely to be a considerable number of prospective purchasers of the goods or services in connection with which the trade-mark or trade name is used, who are likely to be misled by the similarity. On this issue, the good or bad faith of the alleged infringer is an important factor. If he imitates the other's trade-mark or trade name knowingly and acts in other ways to convey the impression that his business is associated with the other, the inference may reasonably be drawn that

---

diversity of the citizenship of the parties. July 5, 1946, c. 541, Title VI, § 39, 60 Stat. 440." (The chapter relates to Trade Marks.) 15 U.S.C.A. § 1121.

"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases.

"The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark

laws. June 25, 1948, c. 646, 62 Stat. 931, 28 U.S.C.A. § 1338."

6. Moton v. Hull, 77 Tex. 80, 13 S.W. 849; Penn. v. Lord Baltimore, 1 Ves.Sen. 444; Cole v. Cunningham, 133 U.S. 107, 10 S. Ct. 269, 33 L.Ed. 538.

7. Beech Nut-Packing Co. v. P. Lorillard Co., 273 U.S. 629, 632, 47 S.Ct. 481, 71 L.Ed. 810; 52 Am.Jur. Trademarks, etc. Sec. 2, p. 508.

8. See also Annotation 148 A.L.R. 12, 92 et seq., 52 Am.Jur. Trade marks, etc. Secs. 110, 111, 112.

there are prospective purchasers to be misled. The actor's purpose to forestall expansion of the other's business is also an indication of the extent, in fact, of the other's interest in his trade-mark or trade name and of the limits within which the interest requires protection." [9]

In United Drug Company v. Theodore Rectanus Co., 248 U.S. 90, 98, 39 S.Ct. 48, 51, 63 L.Ed. 141, the Court speaking through Mr. Justice Pitney, said:

"Property in trade-marks and the right to their exclusive use rest upon the laws of the several states, and depend upon them for security and protection; the power of Congress to legislate on the subject being only such as arises from the authority to regulate commerce with foreign nations and among the several states and with the Indian tribes. In re Trade-Mark Cases, 100 U.S. 82, 93, 25 L.Ed. 550." [10]

Parenthetically, it is interesting to note that when the definition of foreign commerce in the In re Trade Mark Cases, 100 U.S. 82, 96, 25 L.Ed. 550, is read literally, the conduct charged to Steele may be included: " * * * commerce with foreign nations means commerce between citizens of the United States and citizens and subjects of foreign nations * * *".

The Supreme Court has said that the power of Congress "when exercised in respect to foreign commerce may be broader than when exercised as to interstate commerce." Atlantic Cleaners & Dyers v. United States, 286 U.S. 427, 434, 52 S.Ct. 607, 609, 76 L.Ed. 1204.

The extent to which Congress intended to exercise its powers over interstate commerce and over foreign commerce in the Lanham Trade Mark Act of 1946 is indicated by Daphne Robert's Commentary on

that Act appearing just before 15 U.S.C.A. § 1051 at pages 268 and 269, in part, saying:

"The new Act clarifies and extends the phrase 'use in commerce' far beyond the previous laws and the decisions thereunder.

" 'Commerce' is defined as meaning all commerce which may lawfully be regulated by Congress. This includes commerce between States, between Territories, between States and Territories, within the District of Columbia, within the Territories, between States and the District of Columbia, between Territories and the District of Columbia, and between States, Territories or the District of Columbia and foreign nations. Since there is no limitation, it also appears to extend to any other commerce which burdens, restricts or interferes with the free flow of interstate, territorial or foreign commerce. The Supreme Court has held that an activity which is local in its nature may be regulated by Congress if it exercises substantial economic effect on interstate commerce. It is therefore apparent that purely intrastate uses may come under the provisions of the Act if they have a substantial economic effect on interstate, territorial or foreign commerce. * * * [11]

"The foregoing extensions are important for purposes of registration, but they may be of even greater importance in suppressing counterfeits and colorable imitations, since the infringer can no longer defeat an action on the ground that the infringement is purely intrastate if, in fact, his conduct interferes with the free flow of interstate commerce or if it has a substantial economic effect on such commerce.

"Federal Courts have jurisdiction of all actions arising under the Act, and for the first time their jurisdiction clearly extends

---

9. See also Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 415, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 101, 39 S.Ct. 48, 63 L.Ed. 141.

10. See also 52 Am.Jur., Trademarks etc. Sec. 15, p. 514.

11. The definition of "commerce" referred to is in Title 15 U.S.C.A. Sec. 1127. That definition is new with the Lanham Act. It is certainly as broad as, if not broader

than, the definitions of commerce employed in any other Federal statute. See the following Titles and Secs. of U.S.C. A.: Title 7, Sec. 182; Title 9, Sec. 1; Title 15, Secs. 12, 44, and 68; Title 18, Sec. 1951; Title 29, Secs. 142, 152 and 203; Title 30, Sec. 4o; Title 33, Sec. 541; Title 45, Sec. 151; Pocket Supplement, Title 15, Sec. 69. The concluding paragraph of Title 15, Sec. 1127 further expresses the intent "to regulate commerce within the control of Congress [etc.]".

to the intrastate user of a mark which infringes a mark registered under the Federal Act, as well as to intrastate acts of unfair competition irrespective of the amount in controversy or diversity of citizenship."

It would seem that in the Lanham Trade Mark Act of 1946, the Congress intended to regulate interstate and foreign commerce to the full extent of its constitutional powers. To what extent do those powers extend beyond the boundaries of the United States?

■ It is not necessary in this case to draw any line of distinction between the jurisdiction of courts over persons domiciled with a country and over citizens thereof: "Both domicil and national allegiance are recognized bases of jurisdiction over a person." United States v. Stabler, 3 Cir., 169 F.2d 995, 997. Here, the defendant Steele was domiciled in Texas, a citizen of the United States, and was personally served with process.

■ The controlling principle of law is well stated in Am.Law Inst., Restatement Conflict of Laws, Sec. 63: "A nation recognized as such in the law of nations has jurisdiction over its nationals wherever they may be to require or forbid them to do an act unless the exercise of this jurisdiction involves the violation of the law or public policy of the state where the national is." [12]

It could not be contended that Steele's Mexican Trade Mark placed upon him any duty to use the name "Bulova". The Republic of Mexico was not interested in his exercise of the privilege purportedly granted. For the United States to exercise its jurisdiction over one of its own nationals involves no conflict with the sovereignty of the Republic of Mexico.

Bulova Watch Company, at vast expense, has built up an asset of good will in the use of its trade mark or trade name "Bulova", that extends into if not throughout Mexico. If its watches are not actually being sold in that country now, Mexico may reasonably be expected to be within the normal expansion of its business.

Bad faith on Steele's part may clearly be inferred from his deliberate appropriation of the "Bulova" trade name. Further, one of the witnesses testified that when he complained that the price Steel was asking for a watch was too high, Steele replied, "Not for a Bulova".

Steele's conduct involved the purchase of watch cases and dials in the United States. It not only had a substantial effect on foreign commerce, but it resulted in injury to the Bulova Watch Company within the borders of the United States.

The representative of the Bulova Watch Company in the State of Texas testified as follows:

"Q. Concerning the trade area there, are there a considerable number of purchases of watches as a result of the advertising from Mexican areas? A. Oh, I would say a great deal, sir.

"Q. At the same time, have you received complaints concerning watches that are not true Bulovas, watches that have come from Mexico? A. I have had numerous complaints, and personal complaints, from practically every one of the jewelers in this particular district.

"Q. What is the character of those complaints? A. Well, they claim— * * * these people along the Border towns especially come into me and show me watches brought in for repair, claiming that they couldn't repair them. Well, I would not naturally have the watchmaker to open them up, and open up some of them myself, and look at them, but by just glancing at the watch, you can tell that it is not a Bulova watch; after all, I have handled the product for a good many years.

"Q. To what extent have you received those complaints? A. Oh, they run into hundreds and hundreds of them and have been for a good long time too numerous to mention; they would run into—oh, upwards of five hundred.

"Q. Out of Mexico? A. Yes, sir."

The Lanham Act prohibits importation

12. See also the same text, Secs. 47(2), 80, and 377; Blackmer v. U. S., 284 U.S. 421, 436, 52 S.Ct. 252, 76 L.Ed. 375; Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278; Johnson, Sec'y v. Eisentrager, 339 U.S. 763, 769, 70 S.Ct. 936, 94 L.Ed. 1255.

into the United States of labelled or branded merchandise, "which shall copy or simulate the name of any domestic manufacture, or manufacturer, or trader".[13]

That section is not effective, however, to prevent many Americans who visit Mexico from purchasing spurious Bulovas in Mexico and bringing them back across the border into the United States with a resultant substantial effect on foreign commerce and with resultant damage in the United States to the reputation and good will of the Bulova Watch Company.

■ While we have undertaken to reach a decision of this case by a consideration of basic principles, we have also carefully considered the cases relied on by the parties as being most nearly applicable.[14] To discuss those cases would unduly extend this opinion. We think that they support the conclusion we have reached. The cases cited to the contrary may be distinguished upon one or more of the following grounds: (1) they did not relate to so far reaching a law as the Lanham Trade Mark Act; (2) they did not involve acts appropriating good will already established and designed to forestall the normal expansion of trade into a country; (3) they did not involve acts committed within the United States; (4) they did not involve damage resulting to property within the United States. In none of those cases was there any holding of want of jurisdiction on the part of a court to enter an *in personam* decree requiring a citizen domiciled within the jurisdiction of the court to obey the laws of his country even when doing acts beyond its territorial limits.

The cause is reversed for further proceedings not inconsistent with this opinion.

Reversed.

RUSSELL, Circuit Judge (dissenting).

We should not let our personal opinion of, and distaste for, unfair competition lead us into two fundamental errors, which, it seems to me, the majority opinion evidences. I respectfully submit that the holding of the majority in effect gives to the Lanham Trade-Mark Act of 1946 [1] an extraterritorial force wholly unauthorized by the statute, and this error is compounded and increased by the Court's holding that the Courts of the United States have authority to, and indeed should, adjudicate the propriety, validity and legal effect of the administrative and judicial determination of a sister Republic so as to declare illegal and subject to injunction actions and conduct wholly within the jurisdiction and territorial confines of such Republic. Under even the broadest interpretation of the Lanham Act, supra, it evidences no attempt to prescribe a standard of fair competition for the Nations of the world. Its provisions are, and must be, applicable to territory within the reach of Congressional power. Neither do its provisions so compellingly permeate the being, or saturate the conscience, of an American resident, doing business in a foreign country, as to impose a guilty stain upon his acts there done in accordance with authority granted by such country's laws. An American citizen doing business in Mexico does so subject to Mexican laws. I take it that if that Government should declare an entirely opposite concept of, and policy toward, unfair competition than prevails with us this would in no way enlarge the jurisdiction of American Courts to deal with Mexican affairs. However, it appears, on the contrary, that the proper administrative authority of that Republic has granted to Steele the right to use the trade-

13. 15 U.S.C.A. § 1124.

14. The Salton Sea Cases, 9 Cir., 172 F. 792; Vacuum Oil Co. v. Eagle Oil Co., C.C., 122 F. 105; Id., C.C., 154 F. 867; U. S. Ozone Co. v. U. S. Ozone Co. of America, 7 Cir., 62 F.2d 881; Branch v. Federal Trade Comm., 7 Cir., 141 F.2d 31; American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L. Ed. 826; Blackmer v. U. S., 284 U.S.

421, 52 S.Ct. 252, 76 L.Ed. 375; Ingenohl v. Walter E. Olsen & Co., 273 U.S. 541, 47 S.Ct. 451, 71 L.Ed. 762; Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; Marshall v. Turnbull, C.C., 32 F. 124; Id., C.C., 34 F. 827; Western Clock Mfg. Co. v. Smith, 2 T. M. Rep. 522; Geo. W. Luft Co. v. Zande Cosmetic Co., 2 Cir., 142 F.2d 536, 539.

1. 15 U.S.C.A. § 1051 et seq.

mark "Bulova" and that the Courts of that Nation have likewise so adjudicated in litigation essentially between the parties to the present case. That which the sovereign has authorized and judicially confirmed can not, when the acts are performed wholly within the territorial limits of such sovereign, be properly declared illegal and subject to injunction by our Courts merely because the perpetrator of such acts is an American citizen and in person subject to the jurisdiction of American Courts. Consequently, when, on December 5, 1933, the Mexican Director General of Industrial Property granted to Steele the right to use the name "Bulova" in the Republic of Mexico as a tradename for watches (as found by the trial Judge upon undisputed evidence) the acts of Steele *in Mexico* in accordance with the grant were not illegal. Especially is this so when it appears, as it does here, that his right to the trade-mark was upheld in the Mexican Court in the proceedings in behalf of appellant seeking to set aside such registered trade-mark in which Steele was named as a party.

The principles which support the judgment of the trial Court in this case are well established. As declared by Justice Holmes for the Court in American Banana Co. v. United Fruit Co., 213 U.S. 347, 356, 29 S.Ct. 511, 512, 53 L.Ed. 826, "the general and almost universal rule is that the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done. Slater v. Mexican National R. R. Co., 194 U.S. 120, 126, 24 S.Ct. 581, 48 L.Ed. 900, 902. * * * For another jurisdiction, if it should happen to lay hold of the actor, to treat him according to its own notions rather than those of the place where he did the acts, not only would be unjust, but would be an interference with the authority of another sovereign, contrary to the comity of nations, which the other state concerned justly might resent." Supported by the ruling in Ingenohl v. Walter E. Olsen & Co., 273 U.S. 541, 47 S.Ct. 451, 71 L.Ed. 762, that—"a trade-mark, started elsewhere, has only such validity and protection in a foreign country as the foreign law accords it," 63 Corpus Juris, p. 321, Trade-Marks,

Section 11 states: "Trade-marks are limited by the territorial boundaries of the sovereignty in the sense that the existence of a trade-mark in any given jurisdiction is determined according to the law therein, without reference to any foreign rule, judicial or otherwise. Thus, a trade-mark started elsewhere depends for its protection in a foreign jurisdiction on the law prevailing therein, and confers no rights except by consent of that law. Our courts do not decide what trade-marks exist or do not exist in foreign countries, and the decision of a court of a foreign country as to the existence or nonexistence of a trade-mark therein will be given full force and credit in this country; but such foreign decision will not settle who is entitled to the trade-mark here."

See also Cruz v. O'Boyle, D.C., 197 F. 824; Spann v. Compania Mexicana Radiodifusora Fronteriza, 5 Cir., 131 F.2d 609; Harrison v. Triplex Gold Mines, 1 Cir., 33 F.2d 667. The decision in George W. Luft Co. v. Zande Cosmetic Co., 2 Cir., 142 F.2d 536, 540, expressly recognizes and applies the principle which should be applied here. The opinion by Circuit Judge Swan expressly holds that in the countries then involved where the defendants had established their right by the local law to use the tradename in dispute such use could not "constitute unfair competition" with the plaintiff, and therefore they should not be restrained from doing business there in their corporate name or from using "there the trade-mark" in question.

The trial Court properly held that since the conduct complained of substantially related solely to acts done and trade carried on under full authority of Mexican law, and were confined to and affected only that Nation's internal commerce, it was without jurisdiction to enjoin such conduct.

On Petition for Rehearing.

RIVES, Circuit Judge.

Neither of the Judges who concurred in the judgment desire to grant the Petition for Rehearing and the same is therefore, Denied.