STEELE ET AL. *v.* BULOVA WATCH CO., INC.

No. 38. Argued November 10, 1952.—Decided December 22, 1952.

*Wilbur L. Matthews* argued the cause and filed a brief for petitioners.

*Marx Leva* argued the cause for respondent. With him
on the brief were *Alexander B. Hawes, A. Lloyd Syming-
ton, Sanford H. Cohen, George Cohen, Isidor Ostroff* and
*Maury Maverick.*

MR. JUSTICE CLARK delivered the opinion of the Court.

The issue is whether a United States District Court
has jurisdiction to award relief to an American corpora-
tion against acts of trade-mark infringement and unfair
competition consummated in a foreign country by a citi-
zen and resident of the United States. Bulova Watch
Company, Inc., a New York corporation, sued Steele,[1] pe-
titioner here, in the United States District Court for the
Western District of Texas. The gist of its complaint
charged that "Bulova," a trade-mark properly registered
under the laws of the United States, had long designated
the watches produced and nationally advertised and sold
by the Bulova Watch Company; and that petitioner, a
United States citizen residing in San Antonio, Texas, con-
ducted a watch business in Mexico City where, without
Bulova's authorization and with the purpose of deceiving
the buying public, he stamped the name "Bulova" on
watches there assembled and sold. Basing its prayer on
these asserted violations of the trade-mark laws of the
United States,[2] Bulova requested injunctive and mone-

---

[1] Joined as parties defendant were S. Steele y Cia., S. A., a Mexican
corporation to whose rights Steele had succeeded, and Steele's wife
Sofia who possessed a community interest under Texas law.

[2] While the record shows that plaintiff fully relied on his asserted
cause of action "arising under" the Lanham Act, diversity of citizen-
ship and the jurisdictional amount were also averred. As we are
concerned solely with the District Court's jurisdiction over the subject
matter of this suit, we do not stop to consider the significance, if any,
of those averments. Cf. *Pecheur Lozenge Co.* v. *National Candy Co.*,
315 U. S. 666 (1942), decided prior to passage of the Lanham Act.
See also note 6, *infra.*

tary relief. Personally served with process in San Antonio, petitioner answered by challenging the court's jurisdiction over the subject matter of the suit and by interposing several defenses, including his due registration in Mexico of the mark "Bulova" and the pendency of Mexican legal proceedings thereon, to the merits of Bulova's claim. The trial judge, having initially reserved disposition of the jurisdictional issue until a hearing on the merits, interrupted the presentation of evidence and dismissed the complaint "with prejudice," on the ground that the court lacked jurisdiction over the cause. This decision rested on the court's findings that petitioner had committed no illegal acts within the United States.[3] With one judge dissenting, the Court of Appeals reversed; it held that the pleadings and evidence disclosed a cause of action within the reach of the Lanham Trade-Mark Act of 1946, 15 U. S. C. § 1051 *et seq.*[4] The dissenting judge thought that "since the conduct complained of substantially related solely to acts done and trade carried on under full authority of Mexican law, and were confined to and affected only that Nation's internal commerce, [the District Court] was without jurisdiction to enjoin such conduct."[5] We granted certiorari, 343 U. S. 962.

Petitioner concedes, as he must, that Congress in prescribing standards of conduct for American citizens may project the impact of its laws beyond the territorial boundaries of the United States. Cf. *Foley Bros., Inc.* v. *Filardo,* 336 U. S. 281, 284–285 (1949); *Blackmer* v. *United States,* 284 U. S. 421, 436–437 (1932); *Branch* v. *Federal Trade Commission,* 141 F. 2d 31 (1944). Resolution of the jurisdictional issue in this case therefore de-

---

[3] The District Court's unreported findings of fact and conclusions of law, as amended, appear at R. 246–248. Cf. R. 232, 237.

[4] 194 F. 2d 567 (C. A. 5th Cir. 1952).

[5] *Id.,* at 573.

pends on construction of exercised congressional power, not the limitations upon that power itself. And since we do not pass on the merits of Bulova's claim, we need not now explore every facet of this complex[6] and controversial[7] Act.

The Lanham Act, on which Bulova posited its claims to relief, confers broad jurisdictional powers upon the courts of the United States. The statute's expressed intent is "to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such comme[r]ce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trade-marks, trade names, and unfair competition entered

[6] For able Court of Appeals discussions of the impact of *Erie R. Co.* v. *Tompkins,* 304 U. S. 64 (1938) on the law prior and subsequent to the Lanham Act, see *Dad's Root Beer Co.* v. *Doc's Beverages, Inc.,* 193 F. 2d 77 (C. A. 2d Cir. 1951); *S. C. Johnson & Son* v. *Johnson,* 175 F. 2d 176 (C. A. 2d Cir. 1949); *Campbell Soup Co.* v. *Armour & Co.,* 175 F. 2d 795 (C. A. 3d Cir. 1949); *Stauffer* v. *Exley,* 184 F. 2d 962 (C. A. 9th Cir. 1950). See also *National Fruit Product Co.* v. *Dwinell-Wright Co.,* 47 F. Supp. 499 (1942). And see Zlinkoff, Erie v. Tompkins: In Relation to the Law of Trade-Marks and Unfair Competition, 42 Col. L. Rev. 955 (1942); Bunn, The National Law of Unfair Competition, 62 Harv. L. Rev. 987 (1949).

[7] See, *e. g.,* Timberg, Trade-Marks, Monopoly, and the Restraints of Competition, 14 Law & Contemp. Probs. 323 (1949); cf. Brown, Advertising and the Public Interest: Legal Protection of Trade Symbols, 57 Yale L. J. 1165 (1948). Compare, *e. g.,* Pattishall, Trade-Marks and the Monopoly Phobia, 50 Mich. L. Rev. 967 (1952); Rogers, The Lanham Act and the Social Function of Trade-Marks, 14 Law & Contemp. Probs. 173 (1949).

into between the United States and foreign nations."
§ 45, 15 U. S. C. § 1127. To that end, § 32 (1) holds
liable in a civil action by a trade-mark registrant "[a]ny
person who shall, in commerce," infringe a registered
trade-mark in a manner there detailed.[8] "Commerce"
is defined as "all commerce which may lawfully be regu-
lated by Congress." § 45, 15 U. S. C. § 1127. The dis-
trict courts of the United States are granted jurisdiction
over all actions "arising under" the Act, § 39, 15 U. S. C.
§ 1121, and can award relief which may include injunc-
tions,[9] "according to the principles of equity," to prevent
the violation of any registrant's rights. § 34, 15 U. S. C.
§ 1116.

The record reveals the following significant facts which
for purposes of a dismissal must be taken as true: Bulova
Watch Company, one of the largest watch manufacturers
in the world, advertised and distributed "Bulova"
watches in the United States and foreign countries.
Since 1929, its aural and visual advertising, in Spanish
and English, has penetrated Mexico. Petitioner, long a
resident of San Antonio, first entered the watch business
there in 1922, and in 1926 learned of the trade-mark

---

[8] "Any person who shall, in commerce, (a) use, without the consent
of the registrant, any reproduction, counterfeit, copy, or colorable
imitation of any registered mark in connection with the sale, offering
for sale, or advertising of any goods or services on or in connection
with which such use is likely to cause confusion or mistake or to
deceive purchasers as to the source of origin of such goods or services;
or (b) reproduce, counterfeit, copy, or colorably imitate any such
mark and apply such reproduction, counterfeit, copy, or colorable
imitation to labels, signs, prints, packages, wrappers, receptacles, or
advertisements intended to be used upon or in connection with the
sale in commerce of such goods or services, shall be liable to a civil
action by the registrant for any or all of the remedies hereinafter
provided in this chapter, . . . ." 15 U. S. C. § 1114 (1).

[9] See also § 35, 15 U. S. C. § 1117 (profits, damages and costs) ; § 36,
15 U. S. C. § 1118 (destruction of infringing articles) ; § 38, 15 U. S. C.
§ 1120 (damages for fraudulent registration).

"Bulova." He subsequently transferred his business to Mexico City and, discovering that "Bulova" had not been registered in Mexico, in 1933 procured the Mexican registration of that mark. Assembling Swiss watch movements and dials and cases imported from that country and the United States, petitioner in Mexico City stamped his watches with "Bulova" and sold them as such. As a result of the distribution of spurious "Bulovas," Bulova Watch Company's Texas sales representative received numerous complaints from retail jewelers in the Mexican border area whose customers brought in for repair defective "Bulovas" which upon inspection often turned out not to be products of that company. Moreover, subsequent to our grant of certiorari in this case the prolonged litigation in the courts of Mexico has come to an end. On October 6, 1952, the Supreme Court of Mexico rendered a judgment upholding an administrative ruling which had nullified petitioner's Mexican registration of "Bulova." [10]

On the facts in the record we agree with the Court of Appeals that petitioner's activities, when viewed as a whole, fall within the jurisdictional scope of the Lanham Act. This Court has often stated that the legislation of Congress will not extend beyond the boundaries of the United States unless a contrary legislative intent appears. *E. g., Blackmer* v. *United States,* 284 U. S. 421, 437 (1932); *Foley Bros., Inc.* v. *Filardo,* 336 U. S. 281, 285 (1949). The question thus is "whether Congress intended to make the law applicable" to the facts of this case. *Ibid.* For "the United States is not debarred by any rule of international law from governing the conduct of its own citizens upon the high seas or even in foreign countries when

---

[10] *Sidney Steele* v. *Secretary of the National Economy,* decided by the Second Court of the Supreme Court of Mexico. That decision is reprinted, as translated, as Appendix III to respondent's brief.

the rights of other nations or their nationals are not infringed. With respect to such an exercise of authority there is no question of international law, but solely of the purport of the municipal law which establishes the duty of the citizen in relation to his own government." *Skiriotes* v. *Florida,* 313 U. S. 69, 73 (1941).[11] As MR. JUSTICE MINTON, then sitting on the Court of Appeals, applied the principle in a case involving unfair methods of competition: "Congress has the power to prevent unfair trade practices in foreign commerce by citizens of the United States, although some of the acts are done outside the territorial limits of the United States." *Branch* v. *Federal Trade Commission,* 141 F. 2d 31, 35 (1944). Nor has this Court in tracing the commerce scope of statutes differentiated between enforcement of legislative policy by the Government itself or by private litigants proceeding under a statutory right. *Thomsen* v. *Cayser,* 243 U. S. 66 (1917); *Mandeville Island Farms* v. *American Crystal Sugar Co.,* 334 U. S. 219 (1948); cf. *Vermilya-Brown Co.* v. *Connell,* 335 U. S. 377 (1948); *Foley Bros., Inc.* v. *Filardo, supra.* The public policy subserved is the same in each case. In the light of the broad jurisdictional grant in the Lanham Act, we deem its scope to encompass petitioner's activities here. His operations and their effects were not confined within the territorial limits of a foreign nation. He bought component parts of his wares in the United States, and spurious "Bulovas" filtered through the Mexican border into this country; his competing goods could well reflect adversely on Bulova Watch Company's trade reputation in markets cultivated by advertising here as well as abroad. Under similar factual circumstances, courts of the United States have awarded relief to registered trade-

---

[11] See, *e. g.,* 1 Oppenheim, International Law (6th ed., Lauterpacht, 1947), § 145, p. 297.

mark owners, even prior to the advent of the broadened commerce provisions of the Lanham Act.[12] *George W. Luft Co.* v. *Zande Cosmetic Co.,* 142 F. 2d 536 (1944); *Hecker H-O Co.* v. *Holland Food Corp.,* 36 F. 2d 767 (1929); *Vacuum Oil Co.* v. *Eagle Oil Co.,* 154 F. 867 (1907), aff'd, 162 F. 671 (1908). Cf. *Morris* v. *Altstedter,* 93 Misc. 329, 156 N. Y. S. 1103, aff'd, 173 App. Div. 932, 158 N. Y. S. 1123 (1916). Even when most jealously read, that Act's sweeping reach into "all commerce which may lawfully be regulated by Congress" does not constrict prior law or deprive courts of jurisdiction previously exercised. We do not deem material that petitioner affixed the mark "Bulova" in Mexico City rather than here,[13] or that his purchases in the United States when viewed in isolation do not violate any of our laws. They were essential steps in the course of business consummated abroad; acts in themselves legal lose that character when they become part of an unlawful scheme. *United States* v. *Bausch & Lomb Optical Co.,* 321 U. S. 707, 720 (1944); *United States* v. *Univis Lens Co.,* 316 U. S. 241, 254 (1942). "[I]n such a case it is not material that the source of the forbidden effects upon . . . commerce arises in one phase or another of that program." *Mandeville Island Farms* v. *American Crystal Sugar Co.,* 334 U. S. 219, 237 (1948). Cf. *United States* v. *Frankfort Distilleries,* 324 U. S. 293, 297–298 (1945). In sum, we do not think that petitioner by so simple a device can evade the thrust of the laws of the United States in a privileged sanctuary beyond our borders.

---

[12] Cf. 15 U. S. C. §§ 96, 124, requiring the infringing use to be "in commerce among the several States, or with a foreign nation." *United States Printing & Lithograph Co.* v. *Griggs, Cooper & Co.,* 279 U. S. 156 (1929); *Pure Oil Co.* v. *Puritan Oil Co.,* 127 F. 2d 6 (1942).

[13] See *Vacuum Oil Co.* v. *Eagle Oil Co.,* 154 F. 867 (1907).

288

*American Banana Co.* v. *United Fruit Co.,* 213 U. S. 347 (1909), compels nothing to the contrary. This Court there upheld a Court of Appeals' affirmance of the trial court's dismissal of a private damage action predicated on alleged violations of the Sherman Act.[14] The complaint, in substance, charged United Fruit Company with monopolization of the banana import trade between Central America and the United States, and with the instigation of Costa Rican governmental authorities to seize plaintiff's plantation and produce in Panama. The Court of Appeals reasoned that plaintiff had shown no damage from the asserted monopoly and could not found liability on the seizure, a sovereign act of another nation.[15] This Court agreed that a violation of American laws could not be grounded on a foreign nation's sovereign acts. Viewed in its context, the holding in that case was not meant to confer blanket immunity on trade practices which radiate unlawful consequences here, merely because they were initiated or consummated outside the territorial limits of the United States. Unlawful effects in this country, absent in the posture of the *Banana* case before us, are often decisive; this Court held as much in *Thomsen* v. *Cayser,* 243 U. S. 66 (1917), and *United States* v. *Sisal Sales Corp.,* 274 U. S. 268 (1927).[16] As in *Sisal,* the crux of the complaint here is "not merely of something done by another government at the instigation of private parties;" petitioner by his "own deliberate acts, here and elsewhere, . . . brought about forbidden results within the United States." 274 U. S., at 276. And, unlike the

---

[14] 166 F. 261 (C. A. 2d Cir. 1908), affirming 160 F. 184.

[15] 166 F., at 264, 266.

[16] See also *United States* v. *Aluminum Co. of America,* 148 F. 2d 416, 443–444 (1945). Cf. *Ford* v. *United States,* 273 U. S. 593, 620–621 (1927); *Lamar* v. *United States,* 240 U. S. 60, 65–66 (1916); *Strassheim* v. *Daily,* 221 U. S. 280, 284–285 (1911).

*Banana* case, whatever rights Mexico once conferred on petitioner its courts now have decided to take away.

Nor do we doubt the District Court's jurisdiction to award appropriate injunctive relief if warranted by the facts after trial. 15 U. S. C. §§ 1116, 1121. Mexico's courts have nullified the Mexican registration of "Bulova"; there is thus no conflict which might afford petitioner a pretext that such relief would impugn foreign law. The question, therefore, whether a valid foreign registration would affect either the power to enjoin or the propriety of its exercise is not before us. Where, as here, there can be no interference with the sovereignty of another nation, the District Court in exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction. *New Jersey* v. *New York,* 283 U. S. 473 (1931); *Massie* v. *Watts,* 6 Cranch 148 (1810); *The Salton Sea Cases,* 172 F. 792 (1909); cf. *United States* v. *National Lead Co.,* 332 U. S. 319, 351–352, 363 (1947).[17]

*Affirmed.*

Mr. Justice Black took no part in the decision of this case.

Mr. Justice Reed, with whom Mr. Justice Douglas joins, dissenting.

The purpose of the Lanham Act is to prevent deceptive and misleading use of trade-marks. § 45, 15 U. S. C. § 1127. To further that purpose the Act makes liable

---

[17] Cf. *Cole* v. *Cunningham,* 133 U. S. 107, 117–119 (1890); *Phelps* v. *McDonald,* 99 U. S. 298, 307–308 (1879); *Securities and Exchange Commission* v. *Minas de Artemisa, S. A.,* 150 F. 2d 215 (1945); Restatement, Conflict of Laws, §§ 94, 96. And see *British Nylon Spinners, Ltd.* v. *Imperial Chemical Industries, Ltd.,* [1952] 2 All Eng. 780, 782 (C. A.).

in an action by the registered holder of the trade-mark "any person who shall, in commerce," infringe such trade-mark. § 32 (1), 15 U. S. C. § 1114. "Commerce" is defined as being "all commerce which may lawfully be regulated by Congress." § 45, 15 U. S. C. § 1127.

The Court's opinion bases jurisdiction on the Lanham Act. In the instant case the only alleged acts of infringement occurred in Mexico. The acts complained of were the stamping of the name "Bulova" on watches and the subsequent sale of the watches. There were purchases of assembly material in this country by petitioners. Purchasers from petitioners in Mexico brought the assembled watches into the United States. Assuming that Congress has the power to control acts of our citizens throughout the world, the question presented is one of statutory construction: Whether Congress intended the Act to apply to the conduct here exposed.

"The canon of construction which teaches that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States, *Blackmer* v. *United States,* [284 U. S. 421], 437, is a valid approach whereby unexpressed congressional intent may be ascertained." *Foley Bros., Inc.* v. *Filardo,* 336 U. S. 281, 285. Utilizing this approach, does such a contrary intent appear in the Lanham Act? If it does, it appears only in broad and general terms, *i. e.,* "to regulate commerce within the control of Congress . . . ." § 45, 15 U. S. C. § 1127. Language of such nonexplicit scope was considered by the Court in construing the Sherman Act in *American Banana Co.* v. *United Fruit Co.,* 213 U. S. 347, 357. "Words having universal scope, such as 'Every contract in restraint of trade,' 'Every person who shall monopolize,' etc., will be taken as a matter of course to mean only every one subject to such legislation, not all that the legislator subsequently may be able to catch." The *American*

*Banana Co.* case confined the Sherman Act in its "operation and effect to the territorial limits over which the lawmaker has general and legitimate power." 213 U. S., at 357. This was held to be true as to acts outside the United States, although the parties were all corporate citizens of the United States subject to process of the federal courts.

The generally phrased congressional intent in the Lanham Act is to be compared with the language of the Fair Labor Standards Act which we construed in *Vermilya-Brown Co.* v. *Connell*, 335 U. S. 377. There we held that by explicitly stating that the Act covered "possessions" of the United States, Congress had intended that the Act was to be in effect in all "possessions" and was not to be applied merely in those areas under the territorial jurisdiction or sovereignty of the United States.

There are, of course, cases in which a statement of specific contrary intent will not be deemed so necessary. Where the case involves the construction of a criminal statute "enacted because of the right of the Government to defend itself against obstruction, or fraud . . . committed by its own citizens," it is not necessary for Congress to make specific provisions that the law "shall include the high seas and foreign countries." *United States* v. *Bowman,* 260 U. S. 94, 98. This is also true when it is a question of the sovereign power of the United States to require the response of a nonresident citizen. *Blackmer* v. *United States,* 284 U. S. 421. A similar situation is met where a statute is applied to acts committed by citizens in areas subject to the laws of no sovereign. See *Skiriotes* v. *Florida,* 313 U. S. 69; *Old Dominion S. S. Co.* v. *Gilmore,* 207 U. S. 398.

In the instant case none of these exceptional considerations come into play. Petitioner's buying of unfinished watches in the United States is not an illegal commercial act. Nor can it be said that petitioners were engaging

in illegal acts in commerce when the finished watches bearing the Mexican trade-mark were purchased from them and brought into the United States by such purchasers, all without collusion between petitioner and the purchaser. The stamping of the Bulova trade-mark, done in Mexico, is not an act "within the control of Congress." It should not be utilized as a basis for action against petitioner. The Lanham Act, like the Sherman Act, should be construed to apply only to acts done within the sovereignty of the United States. While we do not condone the piratic use of trade-marks, neither do we believe that Congress intended to make such use actionable irrespective of the place it occurred. Such extensions of power bring our legislation into conflict with the laws and practices of other nations, fully capable of punishing infractions of their own laws, and should require specific words to reach acts done within the territorial limits of other sovereignties.