UNITED STATES of America, Plaintiff,

v.

Allan H. WEINER, Joseph Paul Ferraro, Randall Ripley a/k/a Randi Steele, Hank Hayes, Richard Hertz, John Hungerford, and John Doe, all d/b/a Radio New York International ("RNI"), Defendants.

Civ. A. No. 88–1817–Mc.

United States District Court,
D. Massachusetts.

Dec. 13, 1988.

Eileen M. Hagerty, Asst. U.S. Atty., Boston, Mass., for plaintiff.

John Reinstein, Mass. Civil Liberties Union Foundation, Boston, Mass., and Jeremiah Gutman, New York Civil Liberties Union Foundation, New York City, for defendants.

## MEMORANDUM AND ORDER OF SUMMARY JUDGMENT

McNAUGHT, District Judge.

On October 17, 1988, a temporary restraining order was issued, enjoining the defendants from broadcasting from the vessel SARAH, which was then located four miles off Long Island, New York. The vessel was described in a news release by a Boston newspaper as a "pirate seagoing rock 'n' roll station".

Plaintiff has since moved for summary judgment, insisting that, on the undisputed material facts, it is entitled to permanent injunctive relief against the defendants. Defendants ask for summary judgment also seeking to have plaintiff enjoined from interfering with the defendants' broadcasting on the AM radio band between 1605 and 1705 kilohertz. Allan H. Weiner and the other defendants claim an entitlement to a declaration from this Court that they have a right of access to the "open and unused" radio broadcast spectrum described above. They claim a "constitutional right to freedom of expression over the public forum of the airwaves ... (and) ... access to unused and open broadcast frequencies for the purpose of disseminating their views to the public" so long as they meet "all reasonable and narrowly drawn government requirements relating to technical and procedural matters such as noninterference and maximum power". (Defendants' Memorandum of Law in Support of Motion for Summary Judgment, p. 1).

Mr. Weiner has agreed not to broadcast until his rights are determined here.

Indeed, the *material* pertinent facts appear to be undisputed. Defendants have conducted operations under the name Radio New York International. Mr. Weiner is its chief engineer. Randall Ripley, John Hungerford, and Joseph Paul Ferraro are associated with him in Radio New York International. Mr. Ripley, Richard Hertz and Hank Hayes are disc jockeys. None of the defendants has an FCC license to broadcast.

In the month of July, 1987, several of the defendants were involved in the broadcast of music without a license from international waters, utilizing the same vessel outside the United States. The Coast Guard and and agents of the Federal Communications Commission boarded the SARAH and silenced the broadcasts.

The complaint in this action was filed August 5, 1988, with the plaintiff's motion for injunctive relief and supporting affidavits. From sometime in 1986 to August of 1988, the SARAH had been the property of Mr. Ferraro. He then transferred her to Mr. Weiner whose property she remained until October 4 of this year, when Mr. Weiner sold her. Mr. Weiner sold the vessel to an English corporation (Atlantic Radio Communications, Ltd.), with a five-year option to repurchase her and her radio equipment at the price at which he sold her, plus interest. It is Mr. Weiner's intention (Affidavit, Docket Document # 21) to re-buy the SARAH, if the courts rule in his favor, and then to use her to broadcast from international waters on "an open and unused broadcast frequency". The issue in this case is his right to do so.

The government alleges that defendants are in violation of international and federal law, and intend to violate both of them in the future; that "numerous" AM, FM, and shortwave radio stations would be subject to interference from future Radio New York International broadcasts. The plaintiff asserts as well that members of the listening public who rely on certain licensed programming for information and enter-tainment may have such programming disrupted.

The relevant international authority upon which the government bases a portion of its complaint is the International Telecommunication Convention—the basic instrument of the International Telecommunication Union of the United Nations. The Convention became effective in this country in 1986. It governs radio broadcasting between nations and on the high seas. Article 42(1) provides that "the provisions of the Convention are supplemented by Administrative Regulations, which regulate the use of telecommunication and shall be binding on all members." Certain of these are known as Radio Regulations. Article 30, section 1(1) of the Radio Regulations prohibits the establishment and use of broadcasting stations on board ships outside national territories. The FCC has adopted the Radio Regulations. 47 C.F.R. § 2.100 (1987).

As plaintiff has argued, the facts are (1) the defendants made the broadcasts in 1987, and (2) it is their declared intention to make future broadcasts from the SARAH outside the territory of the United States. Article 30, section 1(1) of the Radio Regulations and 47 C.F.R. § 2.100 have been and will be violated unless an injunction issues.

The government points also to the Communications Act of 1934, as amended, 47 U.S.C. §§ 151–611 and relevant regulations thereunder as an example of federal law which has been violated by defendants. Sometime after the action was filed in this Court, defendants registered the SARAH in the state of Maine. Although of Honduran registry formerly, the SARAH is now a United States vessel. The Communications Act, section 301, prohibits unauthorized broadcasting within the United States and from "any vessel or aircraft of the United States". 47 U.S.C. § 301(e). (There is one exception to the statute, but it does not apply here). The defendants' broadcasts in the past and those which were planned for the future constitute radio communications of the type that the Act, the Convention, and regulations seek to prevent. By rea-

son of these violations, the interests of the general public have been harmed already.

The position of the government is strengthened by the fact that the radio "spectrum" is not large enough to accommodate an unlimited number of users. Where more than one broadcaster attempts to use the same radio frequency, interference results. Regulation therefore is essential to the orderly use of the nation's airwaves.

Defendants' response is bottomed on the proposition that the broadcast spectrum is a "natural phenomenon, like oceans and meadows and mountains and lakes"; that it is not the property of government and that, as such, is analagous to "streets, parks, and public places" where a member of the public would have the right to speak, subject to reasonable restrictions as to time, place and manner. *See Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

The defendants do not dispute the fact that regulation is necessary to provide for the orderly administration of the airwaves, but they contest the government's right to set aside a portion of the broadcast spectrum or, as they call it, "public forum", without an important reason for doing so.

There is an important reason.

The Federal Communications Commission has increased its ability to expand the available broadcast spectrum. The AM band will be enlarged to include the 1605–1705 (kHz) spectrum, beginning July 1, 1990. *In re Preparation for an International Telecommunication Union Region 2 Administrative Radio Conference for the Planning of Broadcasting in the 1605–1705 kHz Band*, Fourth Notice of Inquiry, 3 FCC Record 4497. Currently, the band is assigned to non-broadcast uses including travelers' information services, radio navigation beacons, and radio auxiliary stations. It appears also that a number of authorized users of that portion of the AM band continue to use it because their authorizations have not yet expired. Defendants maintain nonetheless that the expanded band remains "open and unused", including the frequency from which they

have broadcast in the past. Their position in this regard is most difficult to understand. There are, it is true, no *authorized* broadcast uses of that band. There are, however, as stated above, non-broadcast users. Defendants ignore the fact that even if the band were "empty", they could not look to the First Amendment for authority to broadcast on an unoccupied frequency in violation of both federal and international law. The First Amendment does not grant anyone the right to broadcast by radio. The regulation by government of broadcasting by radio is constitutional. The use of the "band", as government has argued, is a "scarce resource" requiring regulation. In the future, at an appropriate time, the defendants will be able to apply for a broadcast license on this band. Until that time, like everybody else, the defendants will have to be patient. There is a reason for waiting until July 1, 1990 to permit broadcasting on the "expanded band". This nation has agreed to do so under a 1979 Convention of the World Administrative Radio Conference. Secondly, non-broadcast users with authorizations which have not yet expired will still be entitled to primary use of the band. Thirdly, the passage of time may allow the government the opportunity to shift non-broadcast users to other frequencies. These proposals undoubtedly serve the public interest, which would be defeated if the defendants were allowed to "jump the gun".

Defendants have no unabridgeable First Amendment right to broadcast. *FCC v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 798–802, 98 S.Ct. 2096, 2114–2116, 56 L.Ed.2d 697 (1978); *Columbia Broadcasting System v. Democratic National Committee*, 412 U.S. 94, 101, 93 S.Ct. 2080, 2086, 36 L.Ed.2d 772 (1973). Additionally, that section of the Act (§ 301) which grants the Federal Communication Commission the power to control and regulate channels of radio transmission has been held to be valid under the Commerce Clause. *FCC v. League of Women Voters of California*, 468 U.S. 364, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984).

Defendants have raised the question as to whether this Court has jurisdiction to entertain this action. They argue that so long as the SARAH remains outside the territorial waters of the United States, this Court has no jurisdiction over broadcasts which may emanate from her. They cite *Boureslan v. ARAMCO*, 857 F.2d 1014 (5th Cir.1988). The Communications Act of 1934, specifically section 152, extends the coverage of its provisions to all transmissions by radio which originate and/or are received within the United States. Coverage then is extended beyond places over which the United States has sovereignty. The Act is consistent with the dictates of the International Telecommunication Convention. The rights of foreign nations are not, thus, infringed by the application of United States law. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 289, 73 S.Ct. 252, 257, 97 L.Ed. 319 (1952). The case cited reaffirms the principle that a statute is given extraterritorial effect only where Congress indicates its intent to do so. The Fifth Circuit decided that Title VII does not apply outside the United States. In the Communications Act of 1934, however, Congress explicitly recited its intent to regulate radio communications outside the United States, as noted above. The sole proviso is that such communication should be received within the United States, and there is no question that the broadcasts of the seagoing station would be received within the borders of the United States.

The Federal Communications Commission must allocate what limited available broadcast frequencies exist by way of the licensing process. That type of regulation will best serve the public interest. It does not necessarily permanently eliminate an opportunity for the defendants to broadcast at such time as when a license may be granted to them. In the meantime, however, the right of free speech does not include the right to broadcast without a license. The regulation of the radio band in question does not infringe upon constitutional rights of the defendants. Such regulation serves to foster international relations.

I conclude that the plaintiff is entitled to judgment as a matter of law, and that the defendants' motion for summary judgment must be and is hereby denied.

SO ORDERED.