34 F.3d 246
 1995 Copr.L.Dec. P 27,343, 32 U.S.P.Q.2d 1198
 NINTENDO OF AMERICA, INCORPORATED, Plaintiff-Appellee,
v.
AEROPOWER COMPANY, LIMITED; Grand Arrow Electronics
Company, Limited; Danny Chu, Individually,
Defendants-Appellants,
and
Jane or John Does, Nos. 1-10, Defendants.
NINTENDO OF AMERICA, INCORPORATED, Plaintiff-Appellant,
v.
AEROPOWER COMPANY, LIMITED; Grand Arrow Electronics
Company, Limited; Danny Chu, Individually,
Defendants-Appellees,
and
Jane or John Does, Nos. 1-10, Defendants.
 Nos. 92-2433, 92-2434.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1993.
Decided Sept. 6, 1994.
 
 ARGUED: Chris Richard Redburn, Law Offices of Chris R. Redburn, San Francisco, CA, for appellants. Robert James Carlson, Christensen, O'Connor, Johnson & Kindness, Seattle, WA, for appellee. ON BRIEF: Paul L. Kranz, Law Offices of Paul L. Kranz, Berkeley, CA, for appellants.
 Before WILKINS, Circuit Judge, PHILLIPS, Senior Circuit Judge, and KEELEY, United States District Judge for the Northern District of West Virginia, sitting by designation.
 Affirmed in part, vacated in part, and remanded by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Judge WILKINS and Judge KEELEY joined.
 OPINION
 PHILLIPS, Senior Circuit Judge:
 
 
 1
 In this action by Nintendo of America, Inc. (Nintendo) against Danny Chu, Aeropower Company, Ltd., and Grand Arrow Electronics Company, Ltd. (Chu, or the Chu defendants) claiming violations of the federal copyright and trademark laws and of North Carolina's unfair business practices law, the district court found violations of each and awarded monetary and injunctive relief. We affirm the findings of liability. Because the court did not adequately consider certain limiting factors in awarding extraterritorial injunctive relief, we vacate that portion of its judgment and remand it for reconsideration. Because the court erred in its computation of damages awardable for the copyright, trademark, and state law violations found, we also vacate that portion of its judgment and remand it for recomputation of damages.
 
 
 2
 * Nintendo of America, Inc. (Nintendo), an American corporation with its principal place of business in Redmond, Washington, is a wholly owned subsidiary of the Japanese corporation Nintendo Company, Ltd. (NCL). Nintendo markets numerous high quality video products. At issue in this case is its home video games system known as the "Nintendo Entertainment System." The system consists of a hardware unit, or a control deck, which operates video game software stored on electronic memory devices which are housed in plastic game cartridges. When the hardware unit is connected to a television set, and a cartridge inserted into the hardware unit, the video game is displayed on the television screen and can be "played" via the hardware unit. The cartridges generally contain only one game, although Nintendo does market four cartridges containing either two or three games. The video games embody original audiovisual material for which Nintendo has obtained United States copyright registration certificates. The cartridges and video game software also display several registered trademarks of Nintendo's.
 
 
 3
 Danny Chu is a Taiwanese citizen and the managing director of the Taiwanese corporations Aeropower Company, Ltd. and Grand Arrow Electronics Company, Ltd. In this action, Nintendo alleged that the Chu defendants were manufacturing and distributing video game cartridges containing software that infringed many of Nintendo's registered copyrights and trademarks. The allegedly infringing cartridges contained as many as forty-two games in a single cartridge. The Chu defendants' principal defense on the issue of liability was that any violations of federal and state law that had occurred as a result of their sales of cartridges in the United States were induced by a private "sting" operation carried out by Nintendo agents, as a result of which Nintendo's claims were barred by the doctrine of equitable estoppel and unclean hands. Rejecting these defenses, the district court found that the Chu defendants had imported into and sold in the United States infringing cartridges, and had exported to Canada and Mexico infringing cartridges with the knowledge that they ultimately would enter the United States. On the basis of these factual findings, the court concluded that (1) Chu's activities constituted false designation of an original in violation of the Lanham Trade-Mark Act, 15 U.S.C.A. Sec. 1125(a) (West Supp.1994); (2) Chu willfully had counterfeited Nintendo's products in violation of the Trademark Counterfeiting Act of 1984, 15 U.S.C.A. Sec. 1116 (West Supp.1994)[1]; (3) Chu willfully had infringed eleven[2] of Nintendo's copyrighted works in violation of the Copyright Act, 17 U.S.C. Sec. 501 (West 1978 & Supp.1994); and, (4) Chu had violated North Carolina's Unfair and Deceptive Trade Practice Act, N.C. Gen.Stat. Sec. 751.1, by distributing infringing cartridges within that state.
 
 
 4
 The court awarded both injunctive relief and money damages for the violations found. An injunctive decree barred the Chu defendants from infringing any of Nintendo's registered trademarks and copyrights, and by its terms prohibited any such infringing activity by the defendants in the United States, Mexico and Canada. In awarding damages, the court, concluding that Nintendo was entitled to damages under both the Lanham Act and the Copyright Act, as well as under North Carolina's Unfair and Deceptive Trade Practice Act, started with a base award of statutory damages under Sec. 504(c) of the Copyright Act. At $10,000 per work infringed, this came to a total of $110,000 for the eleven works found infringed. The court then trebled this award to $330,000[3], by invoking the treble damages provision, N.C. Gen.Stat. Sec. 75-16, of the North Carolina Act. It also awarded Nintendo attorney's fees.[4]
 
 
 5
 Chu appealed, challenging the district court's rejection of the defenses of equitable estoppel and unclean hands, the extraterritorial scope of the court's injunctive decree, the court's computation of damages, and the court's award of attorney's fees. Nintendo cross-appealed, challenging the district court's refusal to order disclosure by Chu of sales of infringing cartridges to buyers in countries other than the United States.
 
 II
 
 6
 We begin by affirming, without extended discussion, the district court's rejection of the Chu defendants' affirmative defenses of equitable estoppel and unclean hands, and its resulting decision that the defendants' conceded sales of infringing cartridges in North Carolina constituted violations of the various federal and state laws charged. The court did not clearly err in any of its findings of predicate fact upon which its legal conclusion was based, nor in the legal conclusion.
 
 III
 
 7
 We next consider Chu's challenge to the extraterritorial reach of the injunctive decree. As a predicate for that portion of its decree, the district court concluded that Chu's sales of infringing cartridges to buyers in Mexico and Canada had "had a significant impact upon United States commerce in that these shipments are and have been subsequently entering into the United States by third parties." On this basis, the court concluded that Nintendo was entitled to an injunction whose scope was "sufficiently broad to include actions taken outside the United States which have a significant impact on [U.S.] commerce." The terms of the injunction, however, are not limited to such actions. Instead, the injunction broadly prohibits the Chu defendants from infringing Nintendo's trademarks and copyrights "either in the United States, Canada or Mexico." JA77; Second Supplemental JA265.
 
 
 8
 This requires a look at the powers of federal courts to enter injunctive decrees having extraterritorial reach under either the Lanham Act or the Copyright Act, and the permissible scope of such decrees as the courts may be empowered in general to enter. Because the power is more extensive under the Lanham Act than under the Copyright Act,[5] and because relief afforded under that Act probably would also protect any copyright interests in the same product, we consider only the court's power to enter such a decree under the Lanham Act.
 
 
 9
 Pointing to the "broad jurisdictional grant" in the Lanham Act, with its "sweeping reach into 'all commerce which may lawfully be regulated by Congress,' " and the concomitant reach of the jurisdiction of federal courts under 15 U.S.C.A. Secs. 1116 & 1121 to award injunctive relief to prevent violations of trademark rights, the Supreme Court in Steele v. Bulova Watch Co., 344 U.S. 280, 286-87, 73 S.Ct. 252, 255-56, 97 L.Ed. 319 (1952), long ago recognized the power of federal courts in appropriate circumstances to issue injunctions prohibiting extraterritorial conduct that in violating the Lanham Act would cause harm to United States commerce. Three factors in that case were, however, noted by the Court as important in justifying the particular injunction sought there as one that could be issued "according to the principles of equity," as contemplated by 15 U.S.C. Sec. 1116:(1) that the defendant's extraterritorial conduct was not confined in its effects to the foreign nation where it occurred, but could have adverse effects on commerce within the United States by harming the claimant-registrant's trade reputation in United States markets, 344 U.S. at 286, 73 S.Ct. at 255; (2) that the defendant was a citizen of the United States, id. at 285-86, 73 S.Ct. at 255-56; and (3) that the injunction sought would not interfere with the sovereignty of the nation within whose borders the extraterritorial conduct was to be prohibited, that nation having expressly abrogated any conflicting right in the alleged infringer, id. at 285, 289, 73 S.Ct. at 255, 257.
 
 
 10
 From Bulova 's implication that all three of these factors were critical to the Court's upholding the issuance of such an injunction, lower federal courts have deduced a general rule. While a court may issue an injunction having extraterritorial effect in order to prevent trademark violations under the Lanham Act, it should do so only where the extraterritorial conduct would, if not enjoined, have a significant effect on United States commerce, and then only after consideration of the extent to which the citizenship of the defendant, and the possibility of conflict with trademark rights under the relevant foreign law might make issuance of the injunction inappropriate in light of international comity concerns. See Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 642 (2d Cir.) (applying such a test derived from Bulova, but requiring "substantial" effect on U.S. commerce, in upholding the denial of injunctive relief against conduct of foreign national in his own country under a presumably valid trademark registration in that country), cert. denied, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); Sterling Drug, Inc. v. Bayer AG, 14 F.3d 733, 745-48 (2d Cir.1994) (remanding for reconsideration in light of Bulova/Vanity Fair factors where issuing court had failed properly to make necessary findings to support extraterritorial reach of injunction); American Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n., 701 F.2d 408, 414 & n. 8 (5th Cir.1983) (adopting Bulova/ Vanity Fair test, construed to require only some effect on U.S. commerce, in upholding extraterritorial injunction). See also Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 428-29 (9th Cir.1977) (adopting comparable test for extraterritorial application of federal antitrust laws to determine extraterritorial reach of Lanham Act); Reebok Int'l, Ltd. v. Marnatech Enters., Inc., 970 F.2d 552, 554 (9th Cir.1992) (applying test adopted in Wells Fargo in upholding extraterritorial injunction issued under Lanham Act).
 
 
 11
 Here, the district court properly found that Chu's infringing conduct in Canada and Mexico had a significant impact on commerce in the United States, but, as had the issuing court in Sterling Drug, failed to consider the other Bulova factors: the defendants' citizenship and the possibility of conflict with Canadian or Mexican trademark law. Accordingly, as did the Second Circuit in Sterling Drug, we must vacate that portion of the injunction affecting extraterritorial conduct of the defendants and remand for a reconsideration which takes these two factors as well into account. In doing so, the court may receive such additional proofs respecting the possibility of conflict with Canadian or Mexican trademark, or other law as it deems appropriate. See Sterling Drug, 14 F.3d at 746. The process is a balancing one: no one factor is dispositive, but all must be considered. See Totalplan Corp. of America v. Colborne, 14 F.3d 824, 830-31 (2d Cir.1994) (absence of two factors favorable to issuance of injunction "fatal"); Vanity Fair Mills, 234 F.2d at 643 (combination of defendant's foreign citizenship and conflict with foreign law "fatal" to issuance of such an injunction). The object of the balancing is to determine whether "the contacts and interests of the United States are sufficient to support the exercise of extraterritorial jurisdiction." American Rice, Inc., 701 F.2d at 414 n. 5. And this must be gauged in light of the concerns of international comity identified in Bulova. 344 U.S. at 286, 289, 73 S.Ct. at 255, 257.
 
 IV
 
 12
 We now address Chu's challenge to the award of damages for the found violations of the Copyright Act and the state Unfair and Deceptive Trade Practices Act.[6]
 
 
 13
 Based upon its findings of violations of both Acts, the district court awarded damages that were an amalgam of those authorized under the two different Acts. Specifically, as earlier noted, the court took as its base award an amount of statutory damages authorized by the Copyright Act, 17 U.S.C.A. Sec. 504(c) (West Supp.1994), then trebled that base award by invoking the treble damages provision of the State Act, N.C. Gen.Stat. Sec. 75-16. The base award figure was $110,000, $10,000 for each of the eleven copyright infringements found, as was authorized by the statutory damages provision of the Copyright Act. Trebled by invoking the state treble damages provision, the total award came to $330,000 before a credit reduced it to $285,000. See supra note 3.
 
 
 14
 This award cannot stand, for two reasons.
 
 
 15
 First, the Copyright Act's remedial scheme, of which the statutory damages provision of Sec. 504(c) is an integral part, provides the exclusive remedies for copyright infringement, Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 431, 104 S.Ct. 774, 783, 78 L.Ed.2d 574 (1984), and it contains no provision for trebling statutory damages, either as an integral feature of the federal remedial scheme or by invoking any trebling provisions of state law.
 
 
 16
 Second, the state treble damages provision only authorizes the trebling of actual damages found to have resulted from violations of the state Act. It does not purport to authorize trebling of either actual or statutory damages found recoverable for parallel violations of federal copyright law. Copyright infringement is not itself a violation of the state Act. Indeed the Copyright Act preempts any legal or equitable right under state law which is "equivalent" to any of the exclusive rights within the general scope of copyright, so that state law could not in fact make copyright infringement a violation of the state Act. 17 U.S.C. Sec. 301(a).
 
 
 17
 For all of these reasons, the attempted intermixing of the remedial provisions of the state and federal Acts to arrive at the challenged monetary award was not authorized by either body of law or by both in combination. Accordingly, that award must be vacated and the cause remanded to the district court for reconsideration of the appropriate award of damages for the violations found.
 
 
 18
 In reassessing the appropriate award, the court may of course invoke any of the appropriate remedial provisions of the Copyright Act and Lanham Act, and of the state Unfair and Deceptive Trade Practices Act, and is not limited by our vacatur to any particular amount. It may again award statutory damages in an exercise of its discretion under Sec. 504(c) of the Copyright Act. It may instead award actual damages under Sec. 504(b) for such violations. And it may separately award such damages for violations of the Lanham Act and of the state Act as it deems appropriate.
 
 V
 
 19
 For the reasons above given, we affirm the district court's determination that the Chu defendants are liable to Nintendo for the various violations of federal and state law found. We vacate and remand for reconsideration in accordance with this opinion those portions of the district court's injunctive decree which concern extraterritorial conduct of the defendants. And we vacate and remand for reconsideration the award of damages for the found violations of the Copyright Act, Lanham Act, and the North Carolina Unfair and Deceptive Trade Practices Act. Finally, in view of our vacatur and remand of the damages awarded and a portion of the injunctive decree, we must also vacate the award of attorney fees and remand it for reconsideration in light of the ultimate disposition made by the district court on the damages and injunction issues remanded.[7]
 
 
 20
 SO ORDERED.
 
 
 
 [1]
 We note that although the district court found that Chu had violated 15 U.S.C. Sec. 1116, it must have intended to find that Chu had willfully counterfeited Nintendo's products in violation of the Lanham Act, 15 U.S.C.A. Sec. 1114(1) (West 1963 & Supp.1994). Nintendo was thus entitled to relief under the Trademark Counterfeiting Act of 1984, 15 U.S.C.A. Sec. 1116
 
 
 [2]
 The eleven works at issue are: Balloon Fight (registration number PA247-651); Baseball (registration number PA219-072); Donkey Kong, Jr. (registration number PA146-003); Excitebike (registration number PA254-906); Ice Climber (registration number PA254-907); Mario Brothers (registration number PA178-079); Pinball (registration number PA247-092); Popeye (registration number PA154-248); Super Mario Brothers (registration number PA273-028); Tennis (registration number PA204-665); and Urban Champion (registration number PA241-478)
 
 
 [3]
 The court credited against the $330,000 figure $45,000 that Aerospace was ordered to pay Nintendo as the result of an earlier criminal proceeding. Thus, the lower court ordered Chu to pay Nintendo $285,000
 The United States brought a companion criminal action against Chu, Aerospace, and Grand Arrow. Before the trial in this civil action, the criminal action was resolved by a plea agreement in which Aeropower pled guilty to charges of trafficking in counterfeit goods and criminal infringement of copyright.
 
 
 [4]
 The district court observed that Nintendo was entitled to recover attorney's fees under 15 U.S.C. Sec. 1117, 17 U.S.C. Sec. 505, and N.C. Gen.Stat. Sec. 75-16.1
 
 
 [5]
 This result derives from an ultimately broad jurisdictional grant in the Lanham Act that is not found in the Copyright Act. Specifically, the expressed intent of the Lanham Act is "to regulate commerce," defined as "all commerce which may lawfully be regulated by Congress." 15 U.S.C.A. Sec. 1127 (West Supp.1994). Lacking such an expansive statement of its intended reach, the Copyright Act is generally considered to have no extraterritorial application. 3 David Nimmer & Melville B. Nimmer, Nimmer on Copyrights, Sec. 17.02, at 17-19. By contrast, the Lanham Act's express reach to the limits of Congress' power to regulate commerce is construed to support a wider range of extraterritorial conduct: any which has a significant effect on United States Commerce. See Steele v. Bulova Watch Co., 344 U.S. 280, 286-87, 73 S.Ct. 252, 256, 97 L.Ed. 319 (1952). Why Congress would give a wider extraterritorial reach to its trademark than to its copyright laws has been explained by one commentator as follows:
 Trademarks serve the public interest by helping consumers to identify and distinguish goods and services.... [C]opyrights, however, serve the more compelling public interest in having information, [about] artistic expression ... widely disseminated. Extraterritorial application of ... copyright laws would "effectively deprive the marketplace of something that local law has provided shall be available." ... Conversely, extraterritorial application of trademark laws would deprive the local marketplace only of the symbol used to market the product, not the product itself.
 David R. Toraya, Note, Federal Jurisdiction over Foreign Copyright Infringement Actions--An Unsolicited Reply to Professor Nimmer, 70 Cornell L.Rev. 1165, 1171-72 n. 41 (1985).
 
 
 [6]
 The court found that the Chu defendants had violated the Lanham Act as well, and that Nintendo was entitled to damages under that Act, but concluded that "it would be more appropriate to award the plaintiff Nintendo statutory damages" pursuant to Sec. 504 of the Copyright Act
 
 
 [7]
 In view of our remand of the remedial issues, we do not address Nintendo's cross-appeal of the district court's order disallowing discovery of foreign sales made by the Chu defendants. Nintendo may, if so disposed, seek reconsideration of its motion to compel disclosure in connection with the court's reconsideration of the damages award. We express no opinion on the merits of such a motion if made, beyond noting that its resolution is a matter within the district court's discretion