**LIBBEY GLASS, INC., Plaintiff,**

v.

**ONEIDA LTD., et al., Defendants.**

**No. 3:98CV7439.**

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 4, 1999.

Douglas A. Freedman, Latham & Watkins, Chicago, IL, for plaintiff.

Steven M. Betensky, Adam Chernichaw, White & Case, New York City, Salem M.

Katsh, William J.F. Roll, III, Shearman & Sterling, New York City, Richard M. Kerger, Daniel F. Marinik, Kerger & Kerger, Toledo, OH, for defendant.

Antoinette E. Baker, John Gueli, Alexander Min Sung Kim, Ellen R. Wiseman, Shearman & Sterling, New York City, for counter–claimant.

David S. Foster, Kevin C. May, Kenneth G. Schuler, Latham & Watkins, Chicago, IL, Reginald S. Jackson, Jr., Steven R. Smith, Connelly, Soutar & Jackson, Toledo, OH, for counter–defendant.

## ORDER

CARR, District Judge.

This is an intellectual property case in which plaintiff Libbey Glass, Inc. ("Libbey") alleges that defendants Oneida Ltd. ("Oneida") and Pasabahce Cam Sanayii ve Ticaret A.S. ("Pasabahce"), a Turkish glassware manufacturer, conspired to copy protectable trade dress designs for seven lines of glassware. (Complaint at ¶ 15). Pending is Pasabahce's motion for summary judgment pursuant to Fed.R.Civ. P.Rule 56 on the basis that this court lacks subject matter jurisdiction over Libbey's claims. (Doc. 113). For the reasons that follow, Pasabahce's motion shall be overruled.

### Summary Judgment Standard

A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient to "simply [ ] show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### Basis for Exercising Jurisdiction

Libbey seeks damages for dilution and infringement under the Lanham Act, 15 U.S.C. §§ 1117 and 1125. (Complaint at ¶¶ 46, 50, 54–56, 73, 74, 76–78). Although federal question jurisdiction over trade dress violations clearly exists under federal trademark law, Pasabahce challenges exercise of extraterritorial jurisdiction under the Lanham Act. *See Fun–Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1006 (2d Cir.1997). Based on a formalistic interpretation of the relevant case law, Pasabahce argues that as a foreign company engaged in foreign commerce, it is not subject to the Lanham Act's constraints. (Doc. 114 at 14). Pasabahce misinterprets the relevant law and its legal conclusions are incorrect as a consequence.

The Lanham Act confers broad jurisdictional powers on the courts of the United States. *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 283, 73 S.Ct. 252, 97 L.Ed. 319 (1952). American courts may

apply the Lanham Act to conduct occurring outside of the borders of the United States to prevent harm to "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127; *see Steele*, 344 U.S. at 284, 73 S.Ct. 252; *see also Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 745 (2d Cir.1994) ("United States courts have jurisdiction to enforce the Lanham Act extraterritorially in order to prevent harm to United States commerce."). Thus, the Lanham Act may extend to entirely foreign commerce which has a substantial effect on commerce between the states or between the United States and foreign countries. *See Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 641 (2d Cir.1956); *see also Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 261–62 (2d Cir.1989) (holding that federal statutes apply if underlying conduct occurred within the United States or if conduct which occurred abroad has a substantial effect within the United States). In *Steele*, the Supreme Court divined a congressional intent to give extraterritorial effect to the Lanham Act. There, the Court applied the Lanham Act against an American citizen selling fake "Bulova" watches in Mexico on the ground that his sales in both Mexico and the United States harmed the American trademark holder. *See Steele*, 344 U.S. at 286, 73 S.Ct. 252.

■ Notwithstanding the Supreme Court's decision in *Steele*, the extraterritorial reach of the Lanham Act is limited. *See Fun–Damental Too*, 111 F.3d at 1006. Congress did not intend the Lanham Act to be a sword with which a plaintiff could completely eviscerate a foreign corporation's foreign trademark.[1] *See Sterling Drug*, 14 F.3d at 746. Thus, courts have narrowed the circumstances under which the Lanham Act applies against foreign defendants. In *Vanity Fair*, the Second Circuit, interpreting *Steele*, identified three factors for consideration when deciding if circumstances call for extraterritorial application of the Lanham Act: (1) whether the defendant's conduct has a substantial effect on commerce in the United States; (2) whether the defendant is a citizen of the United States; and (3) whether there exists a conflict between defendant's trademark rights established under foreign law, and plaintiff's trademark rights established under domestic law.[2] *See Vanity Fair*, 234 F.2d at 642.

Citing *Vanity Fair*, Pasabahce argues that because it is not a citizen of the United States, it is not subject to the constraints of the Lanham Act. (Doc. 114 at 9–10). Pasabahce relies on the court's reasoning in *Vanity Fair* that because the Lanham Act "was so thoroughly based on the power of the United States to govern the conduct of its own citizens ... the absence of one of the above factors might well be determinative...." *Id.* at 642–43. Pasabahce ignores the Second Circuit's later decision in *Sterling Drug*, in which the court rejected a mechanical application of *Vanity Fair*. *See Sterling Drug*, 14 F.3d at 746. The *Sterling Drug* court observed that such an "unrefined" approach would fail "to preserve the Lanham Act's goals of protecting American consumers against confusion, and protecting holders of Amer-

---

1. Congress did intend, however, that the Lanham Act "be used as a shield against foreign uses that have significant trademark-impairing effects upon American commerce." *Sterling Drug*, 14 F.3d at 746.

2. At least one court has proposed a more exhaustive list of factors for consideration when determining whether to exercise extraterritorial jurisdiction. These factors include: the degree of conflict with foreign policy or law; the nationality of the parties and the locations of principal places of business; the extent to which enforcement will lead to compliance; the relative significance of effects on the United States as compared with those elsewhere; the extent to which there is explicit purpose to harm or affect American commerce; the foreseeability of such effect; and the relative importance to the violations charged of conduct within the United States as compared with conduct abroad. *See Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 428 (9th Cir.1977).

ican trademarks against misappropriation of their marks." *Id.*

Even if the court's reasoning in *Vanity Fair* were controlling, Pasabahce's reliance on that case is misplaced. There, the "crucial issue in the case was the validity of the defendant's Canadian trademark registration under Canadian trademark law." *Vanity Fair*, 234 F.2d at 646. The court concluded that Congress did not intend the Lanham Act to reach "acts committed by a foreign national in his home country under a presumably valid trademark registration in that country." *Id.* at 642. Here, unlike the defendant in *Vanity Fair*, Pasabahce offers no proof of a foreign issuance of a superior right to use the trade dress designs in question. Thus, the *Vanity Fair* holding is not directly applicable to this case.

In any event, stringent application of the *Vanity Fair* test is inappropriate where, as here, a defendant could unjustly "evade the thrust of the laws of the United States in a privileged sanctuary beyond our borders." *Steele*, 344 U.S. at 287, 73 S.Ct. 252; *see also Scotch Whiskey Ass'n v. Barton Distilling Co.*, 489 F.2d 809, 813 (7th Cir.1973) ("The .purpose underlying the Lanham Act ... should not be evaded by the simple device of selecting a foreign licensee."). To enforce the Lanham Act as Congress intended, a court must weigh each *Vanity Fair* factor against the others; the presence or absence of any one factor is not dispositive. *See Nintendo of America, Inc. v. Aeropower Co., Ltd.*, 34 F.3d 246, 251 (4th Cir.1994); *see also Liberty Toy Co., Inc. v. Fred Silber Co.*, No. 97–3177, 1998 WL 385469, at *5 (6th Cir. June 29, 1998) (referring to the *Vanity Fair* factors as a "balancing test."). Such balancing test determines whether "the contacts and interests of the United States are sufficient to support the exercise of extraterritorial jurisdiction," *American Rice, Inc. v. Arkansas Rice Growers Co-op. Ass'n*, 701 F.2d 408, 414 (5th Cir.1983), as gauged "in light of international comity concerns." *Nintendo*, 34 F.3d at 250.

Here, a balancing of the *Vanity Fair* factors reveals that the exercise of extraterritorial jurisdiction over Pasabahce is proper.

### Substantial Commercial Effect

■ As mentioned, Libbey does not contend that Pasabahce is an American citizen. Pasabahce, however, has not shown it has valid rights to the trade dress designs at issue in Turkey. There is, accordingly, no basis for fearing that adjudication of Libbey's rights to those designs would interfere with the laws of Turkey. Likewise, because Pasabahce has not shown a registration under Turkish law, there is no evidence to support the proposition that Turkey has an interest in this litigation that conflicts with application of the Lanham Act. Thus, the only question remaining, and the one on which disposition of this motion hinges, is whether Pasabahce's production of the allegedly infringing glassware would have a substantial effect in this country on interstate commerce. I believe that Libbey has met its burden and made that showing.

A substantial effect on commerce may exist where a defendant's activities are supported by or related to conduct in United States commerce. *See Calvin Klein Industries, Inc. v. BFK Hong Kong, Ltd.*, 714 F.Supp. 78, 80 (S.D.N.Y.1989). Effects on domestic commerce may include certain harms to a plaintiff, as a domestic corporation, such as diversion of sales or injury to reputation. *See Warnaco Inc. v. VF Corp.*, 844 F.Supp. 940, 950–51 (S.D.N.Y.1994). In *Steele*, for example, plaintiff Bulova's sales dropped because consumers could find cheap imitation "Bulova" watches just over the Mexican border. *See Steele*, 344 U.S. at 286, 73 S.Ct. 252. Additionally, as defective spurious watches filtered through the Mexican border into the United States, Bulova's trade reputation suffered significantly. *See id.* The *Steele* Court regarded both· consequences of defendant's infringement as having a substantial effect on commerce. *See id.*

In *Vanity Fair*, plaintiff sought a blanket prohibition against a Canadian retailer's use of the name "Vanity Fair" in connection with the sale of defendant's products in Canada. *See Vanity Fair*, 234 F.2d at 638. Even though the court refused to extend the Lanham Act extraterritorially, the court observed that the first factor, whether there is a substantial effect on commerce, was present. *See id.* at 642. The court emphasized that as a result of the "high quality of plaintiff's merchandise, and its extensive promotion and advertising, the name 'Vanity Fair' has become associated ... with plaintiff's products," and that defendant's use of the name would likely interfere with that association. *Id.* at 637. As in *Steele*, the likelihood of consumer confusion and harm to reputation were enough to constitute a substantial effect on American commerce.

Here, Pasabahce does not dispute that it manufactured to glassware at issue, nor does it dispute that the glassware at issue is sold in the United States. While these facts alone may not be enough to support a finding that Pasabahce's conduct had a substantial effect on American commerce, they raise a question of material fact as to that issue. As I held in an earlier opinion (Doc. 201), Libbey has raised a question of material fact as to whether Pasabahce's conduct constituted infringement. In *Vanity Fair* and *Steele*, negative consequences of infringement, such as consumer confusion and harm to plaintiff's reputation, constituted substantial effects on commerce. *See Steele*, 344 U.S. at 286, 73 S.Ct. 252; *Vanity Fair*, 234 F.2d at 637. Thus, Libbey has raised a question of material fact as to whether Pasabahce's conduct substantially affected commerce in the United States.

Because Libbey has a raised a question of material fact as to two of the three

Vanity Fair factors, I shall overrule Pasabahce's motion for summary judgment.[3]

## Conclusion

For the foregoing reasons, it is hereby

**ORDERED THAT:**

Pasabahce's motion for summary judgment on the basis that this court lacks subject matter jurisdiction over plaintiff's claims shall be, and hereby is, overruled without prejudice to Pasabahce's right to renew the motion at the close of Libbey's case at trial.

**So ordered.**

---

**3.** A pretrial decision regarding jurisdiction can have a binding effect on the rest of the litigation. Here, however, I prefer to handle this as a conventional summary judgment motion, and will simply overrule the motion without prejudice to Pasabahce's right to renew at the close of Libbey's case at trial. Thus, if Libbey fails adequately to show at trial that Pasabahce's conduct has a substantial effect on American commerce, Pasabahce will be able to seek dismissal.